## WILLIAM MARSHALL *vs.* JAMES PARTYKA ET AL.

First Judicial District, Hartford, March Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE AND KEELER, JS.

A lessor who extends the time within which the balance of a quarter's rent may be paid by the tenant, cannot declare and enforce a forfeiture of the lease if payment be made or tendered by check, as permitted by the lease, within the time so stipulated.

In the present case the extension granted was "within a week or so" after the expiration of the ten-day period of grace allowed by the lease. *Held:—*

1. That a check for the balance of the rent, left by the tenant with his wife on the last day of the ten-day period, to be given to the lessor when he called, pursuant to the custom occasionally followed by the parties, was a sufficient compliance with the terms of the lease, regardless of the extension granted; and that another check for the same amount left by the tenant at the lessor's house thirteen days thereafter, and immediately after notice that the lessor had declared a forfeiture for the nonpayment of rent, was, under the circumstances existing, a sufficient compliance with the agreement to pay "within a week or so," especially as it was found that the lessee was, and always had been, ready, able and willing to pay this rent.

2. That in view of the uncertainty as to when the extension granted— "within a week or so"—might be said to expire, the lessor was bound to give the lessee reasonable notice of his purpose to declare a forfeiture at the end of one week, if he so intended, in order that within such time the lessee might make payment and thus protect his interest.

3. That in determining the meaning of the expression "within a week or so," evidence of the amount and nature of the lessee's expenditures upon the property was material and competent; but that evidence offered in rebuttal, to the effect that when the lease was made the lessee told the lessor he desired the premises for an entirely different purpose, was immaterial and properly excluded; and furthermore that its exclusion was apparently harmless.

Argued March 7th—decided April 4th, 1923.

WRIT OF ERROR to reverse an alleged erroneous judgment of the City Court of New Britain, *Alling, J.,* in an action of summary process. *No error.*

*Frederick B. Hungerford,* for the plaintiff.

*Mortimer H. Camp* and *Bernard Donald Gaffney,* for the defendant Geragosian.

WHEELER, C. J. The plaintiff in error, hereinafter called the lessor, leased on October 24th, 1921, to the defendant in error, hereinafter called the lessee, a twenty-acre lot for ten years, and an apartment for three years, for the yearly rent of $600, payable quarterly in advance on the 24th days of January, April, July and October. The lessor claims that the lessee failed to make the payment due July 24th, and upon notice by the lessor that the lease was broken for non-payment of rent, it terminated and the lessor became entitled to re-enter and take possession of the premises.

The lease provided that if the rent should remain unpaid ten days after it became payable, the lease should, without notice to quit, terminate, and the lessor might recover possession as in summary process, without demand of rent and re-entry for condition broken as at common law; and that "payments of rent may be made by checks of the lessee to the lessor which must be drawn against funds actually on deposit." It further gave the lessee the right to erect buildings on the twenty-acre lot in any manner he might select, and to remove the same at any time before the end of the term.

On July 29th, 1922, the lessor and lessee agreed that the lessee might pay the rent due July 24th, by paying one half within the ten-day period limited in the lease, which extended the period of this payment to August 3d, and the other half "within a week or so thereafter." By the custom of the lessor and lessee, sometimes the lessor called at the lessee's house for the rent, and sometimes the lessee paid the rent to

the lessor at his house. The lessee paid one half of the rent as agreed, and on August 3d, 1922, left with his wife a check for the payment of the other half of the rent to the lessor when he should call. The lessor did not call, and the check remained in the custody of the lessee's wife until August 16th, when the lessor notified the lessee that the lease was broken for non-payment of rent. A half hour later the lessee left at the lessor's house a check for this rent. Between August 2d and 16th, the lessee did not at all times have funds on deposit at the bank on which this check was drawn. As soon as the bank was opened on August 16th, the lessee deposited in the bank sufficient funds to meet this check. After August 16th, the lessee did not at all times have sufficient funds in the bank to meet this check. The finding that the lessee was, and always had been, ready, able and willing to pay this rent, would seem to make the check good which the lessee left with his wife for the lessor. The custom of the parties in the payment of the rent, sometimes at the lessor's and sometimes at the lessee's house, made the lessee's course in leaving this check with his wife to be given the lessor, not unusual, and was a sufficient compliance, under the circumstances of this case, with his promise to pay the rent on or before August 3d. Aside from this, the tender of payment at 8:30 o'clock on the morning of August 16th, by a check which was made good at the opening of the bank at 9 a. m., under the circumstances existing in the re-lations between these parties, was a sufficient com-pliance with the lessee's agreement to pay the balance of the rent "within a week or so." The time of pay-ment was, by the agreement of the parties, indefinite. "Within a week or so" after the time limited in the lease, was the equivalent of saying in about a week after the time limited in the lease. That is, the par-

ties agreed that the lessee might pay this half of the rent in about a week after August 3d, or about August 10th. We could not hold that a payment on August 16th was not a compliance with the agreement to pay about August 10th, and especially unfair would such a construction be under the particular facts of this case. The rent was payable quarterly in advance; one half of this quarterly payment had been made on August 3d; no prejudice could come to the lessor through a few days' delay, and a very large loss would fall upon the lessee if the lease were forfeited together with the improvements placed upon the premises by the lessee; all of these circumstances support the construction which we have placed upon these words and emphasize the harshness of a construction which declared a forfeiture.

Reasonable conduct on the part of the lessor who had made an agreement so indefinite as to the date of payment of the rent, and concerning whose determination reasonable men might differ, required that he give the lessee notice of his purpose to declare a forfeiture upon a named day within the period covered by about August 10th, so that the lessee might have opportunity to make payment before this day and thus protect his interest.

The court overruled the lessor's claim that the lessee's expenditures for improvements were immaterial to the determination of whether or not the lessee was in default in payment of rent. The ruling was correct. This issue depended upon determining what the term of the agreement, "within a week or so," meant. All the facts surrounding these parties at the time of this agreement and relating to the lease and the occupation of the premises were admissible, if material and competent, and the fact of the making of these improvements was both material and competent.

After the lessee had introduced evidence of the making of the improvements in support of the allegation of his answer, the lessor, in rebuttal, offered to prove that the lessee, in obtaining his lease, had told him that his purpose in leasing the premises was one entirely different. The offer was properly excluded. It did not tend to contradict the making of the improvements, nor tend to prove or disapprove any fact in issue, and so far as the record shows was not rebuttal. In addition, its exclusion does not appear to have harmed the plaintiff.

There is no error.

In this opinion the other judges concurred.