THE AMERICAN SUGAR REFINING COMPANY *vs.*
EDWIN G. BLAKE ET AL.

First Judicial District, Hartford, March Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

A clause in a contract for the purchase of sugar, that an "assortment [i.e. choice of grades and containers] is to be furnished to seller by buyer before September 1st," not only conferred upon the buyer the privilege of making the selection but imposed upon him the duty of so doing, and his refusal constituted a breach of contract which relieved the seller from the necessity of making a tender prior to bringing action against the buyer.

Upon the buyer's refusal to furnish an assortment, the seller had the privilege, but not the duty, to make a tender under the provision that "in event assortment is not furnished promptly, seller reserves right to ship such grades as it has available at time of shipment."

The further provision that the buyer's assortment should be "subject to such substitution as seller may find necessary to make," does not warrant an arbitrary disregard by the seller of the buyer's specifications, the privilege of substitution being limited to situations where its exercise would be reasonably necessary.

After the failure of the buyer to furnish an assortment within the specified time, the parties agreed to an indefinite extension of the time for performance. *Held* that it was immaterial whether this agreement was construed as preserving the *status quo* or as reinstating the terms of the original contract, since, at the expiration of the waiting period, the buyer still refused to make his assortment.

Argued March 3d—decided April 3d, 1925.

ACTION to recover damages for an alleged breach of contract by the defendants to purchase from the plaintiff a quantity of sugar, brought to the Superior Court in Hartford County and tried to the jury before *Marvin, J.;* verdict and judgment for the defendants, and appeal by the plaintiff. *Error and new trial ordered.*

The action is for damages for breach of four contracts for the purchase and sale of sugar. The cause of action under the first count is stated as follows:

"1. On or about June 7, 1920, the defendants by their duly authorized agent, entered into a contract with the plaintiff whereby the plaintiff agreed to sell and deliver and the defendants agreed to buy forty (40) barrels of fine granulated sugar or equivalent, at the basing price of twenty-two and one-half (22½) cents per pound.

"2. By the terms of said contract it was provided that delivery of said sugar should be made by the plaintiff during the month of September, 1920, or as soon thereafter as possible, and that the defendants were to furnish assortment desired by them to the plaintiff on or before September 1, 1920.

"3. Although the plaintiff was ready and willing

to deliver and supply the defendants with said sugar as provided in said contract, the defendants failed and neglected to give assortment and shipping instructions for any portion thereof.

"4. Thereafter the plaintiff notified the defendants that they must furnish assortment and shipping instructions to the plaintiff in order that said sugar might be taken out and delivered to the defendants, but the defendants have wrongfully neglected and refused to furnish assortment or shipping instructions or to take out, accept and pay for said sugar."

These allegations are incorporated by reference in each of the other counts, except as the dates of the respective contracts and the amounts of sugar contracted for vary. Otherwise the contracts are identical, including the price and delivery date. Each contract consisted of an order and acceptance in writing, and it is only necessary to quote the material portion of one acceptance: "Terms: Cash, less 2% 7 days. Sold to Blake & Backes, Hartford, Conn. . . . Basis 22.50 f. o. b. Boston. . . . Delivery complete on receipt of goods by carrier. This purchase to be invoiced and paid for at contract price. No allowances will be made for declines in market. This contract contingent on strikes, accidents, fire or other delays beyond seller's control. All additional import duties, excise or other taxes, hereafter levied on the raw or refined sugar necessary to fill this contract at buyer's expense in addition to price specified. Subject to rules and regulations of any government department at the time of shipment or delivery. . . . Assortment to be furnished to seller by buyer before September 1, 1920, but subject to such substitutions as seller may find necessary to make. In event assortment is not furnished promptly, seller reserves right to ship such grades as it has available at time of shipment. Delivery to be

during September or as soon thereafter as is possible, and buyer will accept delivery when made by seller. Seller is to have option of making delivery from any of its refineries. All transportation charges to be for the account of buyer. Subject to rules and regulations of any Government Department at the time of shipment or delivery."

"Basis 22.50" means on the basis of $22.50 per hundred pounds of white granulated sugar in barrels. "Assortment" means a specification of the desired grades of sugar and containers. There are at least fifteen such grades and containers varying in price per pound, and by the custom of the trade, standard differentials are applied to the basic price of white granulated sugar in barrels, in case the buyer specifies other grades or other containers in making up the "40 barrels or equivalent" called for by the contract.

Although the case went to the jury on a denial of all the allegations of the complaint, the execution and validity of the contracts is now admitted.

From August, 1920, to March, 1921, the market price of sugar steadily dropped. In August, 1920, defendants requested the plaintiff to cancel all the contracts, which the plaintiff promptly refused to do. Defendants did not furnish any assortments before September 1st, nor did the plaintiff deliver or attempt to deliver any sugar under the contracts during the month of September. On October 1st, 1920, defendants wrote plaintiff's manager asking him to hold off shipment as it was impossible for them to finance any more sugar at the present time, and added: "We will not shirk, but will take care of this business as soon as we are in a position to do so." On October 2d, plaintiff's manager replied: "I will do what I can toward holding off these shipments, but cannot give you any definite promise as to how long I will be able to do so;" pointing out

that plaintiff expected its customers to take their orders, in order to keep its plant in operation, and to enable it to accept outstanding commitments for raw sugar.

Thereafter plaintiff made frequent attempts by letters and at personal interviews to induce the defendants to furnish assortments and give shipping directions. It also proposed in writing several alternative arrangements for the gradual absorption of the shipments contracted for in six months, one year, eighteen months, or two years, the latter being conditioned on additional commitments for future deliveries, all of which propositions defendants rejected. Up to and including March 16th, 1921, plaintiff continued to ask the defendants to furnish assortments and take out the sugar contracted for, and until March 16th, 1921, defendants, without positively refusing to furnish assortments, continued to refrain from doing so and to assert temporary inability to accept and pay for sugars contracted for. The foregoing facts are not in dispute. On March 16th, 1920, the parties held a final conference, concerning which the testimony is irreconcilably conflicting. Plaintiff's secretary, Gibson, testified, in effect, that the defendants then unqualifiedly repudiated the contracts. The defendant Blake, whose testimony the jury doubtless accepted, testified as follows: "Well, as near as I can remember, it was in relation to shipment of our sugars and our contracts, and I asked him why he didn't ship the contract out and he said he would like assortments, and I said, 'on your contract it says you can ship without assortment, what's the matter?' Then he put up an offer to me to take so many barrels at a time, and kept changing the period of the contract every time so I didn't know where I stood."

On March 24th, 1921, plaintiff's secretary wrote an ultimatum stating that unless the defendants, on or

before a specified date, communicated their willingness to recognize all their obligations under the contracts, the matter would be turned over to the plaintiff's attorneys. After some further negotiations, the nature of which does not clearly appear, this action was brought in January, 1922.

The trial court charged the jury as follows as to the extension of time agreed on: "This, of course, operated as a mutual agreement for an extension of time for an indefinite period. That is to say, the Sugar Company gave Blake & Backes more time to file assortments and take delivery, but the company waived no other part of the agreement. This period of waiting . . . could be terminated at will by the company by shipping sugar, and by Blake & Backes by either specifying assortments and shipping directions, or by simply requesting shipment."

As to the interview of March 16th, 1921, the court charged that if the jury found that the defendants did not repudiate their contracts at that interview, and "if it finally terminated with the statement of Mr. Blake, 'why don't you ship the sugar; what's the matter' you may conclude that this meant that the extension of time he and his partner had asked for was terminated, that he asked for no further indulgence, and that it was up to the company to send along the sugar."

The construction of the contract indicated in the last quoted excerpt, is restated as follows in the memorandum denying the motion to set aside the verdicts: "Whether his [Mr. Blake's] story or that of Mr. Gibson is to be believed, the 'period of waiting' came to an end at the conference of March 16th, or within a week or two thereafter, and the duties of each party to the contracts revived. There had been no waiver on the part of the defendants and no refusal to perform if

plaintiff did its part.   Under such circumstances the court is unable to see any reason why occasion exists for varying the usual rule that 'the vendor of personal property cannot put the vendee in default without tendering delivery and alleging and proving it.' "

Plaintiff appeals from the denial of its motion to set aside the verdicts for the defendants, and for errors in the charge.

*Alvan Waldo Hyde,* for the appellant (plaintiff).

*Hugh M. Alcorn,* with whom was *J. Agnes Burns,* and, on the brief, *William F. Henney,* for the appellees (defendants).

BEACH, J.   The general situation presented by these contracts and by the evidence is not unfamiliar. *Napier* v. *Peoples Stores Co.,* 98 Conn. 414, 120 Atl. 295; *Rosenfield* v. *Connecticut Fruit & Commission Co.,* 98 Conn. 428, 119 Atl. 895.   In the *Rosenfield* case, as in this, the parties had agreed to an indefinite extension of time for performance, by virtue of which it was held that some of the contracts in question were to be treated as open, executory contracts at the date of the receivership, though the original delivery date had passed.

The controlling question in this case is whether on and after March 16th, 1921, the plaintiff was bound to deliver or tender delivery of the sugars contracted for, in order to put the defendants in default.   The complaint alleges no delivery or tender, and admittedly none was made.   The answer to this question depends, first, on the construction of the written contracts, and, perhaps, on whether all the original rights and duties of the parties under the written contracts were continued in force by the subsequent agreement for an indefinite extension of the time for performance.

Turning to the writings, the issue, when stated specifically, is whether the words, "assortment to be furnished to seller by buyer before September 1, 1920," confer a mere privilege of selection which the buyer might or might not exercise at will, or whether they express an obligation to furnish assortments before September 1st, 1920, in default of which the seller is not bound to ship any sugar at all. Looking at the words used, the phrase "assortment to be furnished to seller by buyer," etc., is no less obligatory in form than the phrase "delivery to be during September," etc.; and elsewhere in the orders and acceptances, the words "to be" are used in the imperative sense, e.g., "this purchase to be invoiced and paid for at contract price;" "all transportation charges to be for the account of buyer."

So far as choice of words determines intent, the furnishing of assortments by the buyer before September 1st is as obligatory as the delivery of the sugar specified by the seller.

On the other hand, it is contended that the furnishing of assortments is not of the essence of the contract because the assortment is "subject to such substitutions as seller may find necessary to make," and as defendants read the contract, the assortment may therefore be disregarded by the seller, if furnished. We think, however, that the right of the seller to make substitutions is, on its face, limited to a case where the seller may reasonably find that a necessity exists for doing so. There are fifteen or more different grades and packages of sugar which the buyer might specify, and except for this provision, the plaintiff would theoretically be required to carry in stock or in process fifteen times the amount of sugar called for by its contracts. Practically its experience must enable it to approximately anticipate the demands of its jobber

customers; but even so, it is not unreasonable that it should take the precaution of protecting itself against unexpected demands for particular grades and packages of sugar, by a right of substitution to be exercised in case of necessity. We note, in this connection, that the contract makes a clear distinction between the case where the buyer furnishes an assortment, when the seller may make such substitutions as it may find "necessary" to make, and the reserved right of the seller, in case no assortment is furnished, to ship such grades as it has "available." Fairly construed, the contract requires the seller to honor assortments promptly furnished in so far as it is able to do so. It would be unreasonable and inconsistent with the terms of the contract to construe it as giving the buyer a right of selection and then taking it away again. We think that the furnishing of assortments by the buyer is not merely a precatory specification, which the seller may arbitrarily disregard, and that the obligation of the buyer to furnish assortments before September 1st, being expressed in obligatory terms, cannot be treated as without contractual force and effect.

It is further contended that the furnishing of assortments is wholly for the benefit of the buyer, and that a provision wholly for the benefit of one of the parties to a contract may be waived by him. A guarded passage from Williston on Sales is quoted in support of this claim, but the case referred to by Williston is one where the seller gave a warranty coupled with the proviso that if the warranty were broken, the buyer should notify the seller before bringing suit for damages, and it was held that the seller might waive the notice. That is a very different proposition from saying that a promisor may waive the performance of his own promise.

Besides, the furnishing of assortments is for the

benefit of both parties. The plaintiff is known as a large refiner of many different grades of sugar, and it is clearly for the plaintiff's benefit that it should be notified thirty days before it is required to make deliveries on its monthly contracts, what grades of sugar its customers desire, in order that it may adjust its refining processes with a view to satisfying the existing and probable future requirements of the trade.

As further illustrating the contractual importance of the buyer's agreement to furnish assortments, it may be pointed out that these are contracts for the sale of unascertained grades of sugar of varying prices per pound, and that no authority is given to the seller to appropriate specific grades of sugar to the contract in gross, except in event assortment is not furnished promptly. For this and other reasons it has been held in one case that contracts of this same form were not enforceable under the statute of frauds because the contract price could not be ascertained without going outside of the written order signed by the buyer. *Franklin Sugar Refining Co.* v. *Howell,* 274 Pa. St. 190, 118 Atl. 109.

We are of opinion that the contracts do not confer on the buyer a mere privilege of furnishing assortments, which he may or may not exercise at will; and that the clause in question is in form and in substance an obligatory covenant to furnish assortments, upon which the seller's covenant to deliver is dependent in order of performance. It follows that the seller's reserved right to ship available grades in case assortment is not furnished promptly is, in effect, as it is in form, "a privilege and not a duty." *Franklin Sugar Refining Co.* v. *Hanscom Bros.,* 273 Pa. St. 98, 116 Atl. 140.

The result is that on October 1st, 1920, when they applied to the plaintiff for an extension of time, the defendants were already in default, and the plaintiff

was entitled under § 4731 of the General Statutes to rescind the contract by giving notice of its election to do so, and sue for damages. And because on that date the period, "during September or as soon thereafter as possible," had not wholly expired within which the plaintiff might ship available grades, it was also entitled to treat the contract as in force and ship or tender delivery to the buyer, and upon the defendants' refusal to accept, to sell for the defendants' account. Plaintiff might then have pursued either one of these two courses at its election.

We come now to the agreement for extension of time evidenced by the letters of October 1st and 2d. These letters may be capable of either one of two constructions: that the agreement simply preserved the *status quo,* and the plaintiff consented to carry the unshipped sugar for an indefinite time terminable by either party on 'reasonable notice; or that the intent was to reinstate all the terms of the original contracts for a like indefinite time. The trial court took the latter view and charged the jury, in a passage already quoted, that all the terms of the contract were extended for purposes of performance. We are of opinion that it makes no difference in the final result whether the agreement for extension is construed one way or the other, because when the period of waiting came to an end, the defendants were still in the position of not having furnished assortments. If the effect of the extension was to preserve the *status quo* as of October 1st, they were still in default; if it was to reinstate the contracts, they had committed a fresh default. According to Mr. Blake's version of the interview of March 16th, 1921, he asked Mr. Gibson why the plaintiff did not ship, and Mr. Gibson replied that he wanted assortments, to which Mr. Blake responded, in effect, by a request for shipment without assortments. We think

this conversation, either alone or in connection with the defendants' failure to comply with the plaintiff's ultimatum of March 24th, must be taken as a definite refusal to furnish assortments, which revived the plaintiff's right to elect either one of its two remedies, supposing that the contracts had been reinstated by the extension of time. See *Franklin Sugar Refining Co.* v. *Howell, supra,* which also discusses the rule of damages applicable where the plaintiff sued without tendering delivery of specific grades of sugar.

Turning to the assignments of error, the trial court, in portions of the charge set forth in paragraphs six, seven and nine, instructed the jury, in substance, that if the defendants, on March 16th, requested shipment, though not furnishing assortments, the plaintiff was bound to ship and could not recover without shipping or tendering delivery. This was error, because the defendants, being themselves in default for failure to furnish assortments, could not make it the duty of the plaintiff to ship by requesting them to do so.

In the portion of the charge set forth in the fifth assignment of error, the court charged as to the clause "assortment to be furnished to seller by buyer before September 1," that "this was a privilege given the buyer, not an obligation imposed on him." This also was error for reasons given. The same must be held as to the portion of the charge complained of in the eighth assignment of error, which instructed the jury that if they found that the defendants, on March 16th, 1920, or at any time, said they were ready to receive the sugar, the plaintiff would have to show delivery or tender to support the allegations of its complaint. The cause of action stated in each count is for defendants' breach of contract by defendants' neglect to furnish assortments and shipping directions, and does not require proof of delivery or tender by the plaintiff.

We are also of opinion that the first assignment of error for refusal to charge as requested in the plaintiff's third request, is well taken. We cannot find that the verdicts were against the evidence.

There is error and a new trial is ordered.

In this opinion the other judges concurred.