THE MERCHANTS BANK AND TRUST COMPANY, EXEC-
UTOR AND TRUSTEE (WILL OF AMANDA P. WEED)
*v.* THE NEW CANAAN HISTORICAL SOCIETY ET AL.

MALTBIE, C.J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 3—decided June 26, 1947

*Frederick Miles,* with whom was *S. Pearce Browning, Jr.,* for the appellant (named defendant).

*David G. Marvin,* for the appellant (defendant The New Canaan Library).

*William C. Ward,* with whom was *Eugene C. Venn,* for the appellee (defendant The Stamford Hospital).

*Freeman Light,* with whom was *Leon K. Paris,* for the appellee (defendant The Norwalk Hospital Association).

MALTBIE, C. J. In this action to secure a construction of a will and codicil annexed to it executed by

Amanda P. Weed, late of New Canaan, many questions were submitted to the trial court for its determination. Only two of the interested parties, The New Canaan Historical Society and The New Canaan Library, have appealed from the judgment.

The testatrix gave the residue of her estate to the plaintiff bank as trustee and directed it to permit the historical society to occupy for its own purposes the testatrix' "Homestead," with certain provisions as to the use to be made of it. One of the questions propounded to the trial court was as to the meaning of a requirement that the trustee "apply net income to maintain said buildings and fences on said real estate [the Homestead] and other incidental charges that may arise in the proper care of said real estate and building." The trial court concluded that this provision required the trustee to pay only the charges for necessary repairs and maintenance of the lands and buildings, taxes and premiums on insurance policies, and did not include the expenses of the operation of the premises by the society, such as those for heat, light, water and cleaning, and of insurance of personal property in the buildings, the services of a curator, protection of valuable documents and records against fire, and the making of alterations or additions to adapt the property to the activities of the society. The society claims that it is entitled to have the trustee pay the charges eliminated by the court. It points to these stipulated facts: The testatrix had been a member of the society since 1913, held office in it and made voluntary contributions to it. Her sister was its president for nine years and had donated to it valuable antiques still owned by it. The income of the society is made up of membership dues of $1 a year and voluntary contribu-

tions. Its annual receipts and disbursements have been between about $600 and about $900. The monthly meetings of its board of governors and the quarterly meetings of its members have been held in a room in The New Canaan Library. It has a valuable collection of books, records and antiques, now kept in the library, a fireproof building. Its books and records are used in complying with many requests for information, and it gives periodic exhibitions of its collections.

In *Hayward* v. *Hayward*, 95 Conn. 122, 125, 111 A. 53, we were called upon to construe a provision in a will in which trustees were directed by the testator "to continue to maintain my home" as long as his son wished to occupy it; and we held (p. 134) that, while they were bound to maintain it in substantially the same condition it was in when the testator died and to take any necessary steps to prevent deterioration and make replacements when necessary, the expenses incident to occupancy must be borne by the son. In *Central Hanover Bank & Trust Co.* v. *Nesbit*, 121 Conn. 682, 685, 186 A. 643, the testator gave the use of certain premises to his brother and his wife for their lives and directed the trustee of his residuary estate "to pay the taxes, assessments, insurance premiums and ordinary expenses for the general upkeep of said property while occupied" by them. The life beneficiaries contended that it was the duty of the trustee to install new heating equipment and pay for the coal used by them. We held (p. 689), citing the *Hayward* case, that any installation of new equipment was limited to such replacements as were necessary to maintain the premises in suitable condition for occupancy, and that the trustee was not bound to furnish coal to heat the house. These cases estab-

lish the rule that where a trustee is directed to maintain premises, the use of which is given by a testator to others, the trustee, in the absence of other controlling factors, is under no duty to pay expenses involved in making changes in the property for its better use by those entitled to occupy it or expenses ordinarily incident to the occupancy of the premises. See *Hudson County National Bank* v. *Flora,* 114 N.J. Eq. 135, 138, 168 A. 241. Indeed, the language of the will before us indicates that this rule accords with the intent of the testatrix, because she restricted the direction to the trustees to the maintenance of the buildings and fences and to other incidental charges that might arise in the proper care of the real estate and buildings.

The only other provision in the will to which the society calls attention in connection with this claim is one in which the testatrix directs the trustee to "intrust" her collection of old-fashioned clothing, furniture, furnishings, silverware and crockery to the society to be retained in the buildings for such exhibition as the society, with the approval of the trustee, may deem proper. Any expenses necessary in connection with the retention of these articles and their exhibition would be incident to the occupancy of the building by the society. Nor can we find anything in the facts we have stated which would suffice to vary the ordinary meaning to be attached to the words used by the testatrix. The expenses the society claims the trustee should pay for the most part fall within the class of costs incident to occupancy. Furnishing fireproof protection for its books and records and making changes and additions to adapt the building to the uses of the society would be in the nature of betterments for which the trustee is not

bound to pay. That the testatrix did not intend to impose the duty of furnishing fireproofing in the present building is indicated in the provision in the fifth article that, if the building is destroyed by fire, the trustee is to erect a building for the use of the society, with a recommendation that "a fire proof room be a part of such new building"; as she obviously had in mind the matter of fireproofing, she would naturally have directed the trustee to provide it in the existing building had she intended that to be done.

The only expense which the trial court held the trustee was not bound to pay, outside the classes just mentioned, is the cost of insuring the personal property. The testatrix gave her collection of clothing, furniture, furnishings, silverware and crockery to the trustee, although with a direction to "intrust" it to the society and with a gift of it to the society upon the nonacceptance by it of the provision giving it the use of the premises or upon the termination of such use. Under this provision the title to the property was vested in the trustee until one of the conditions arose upon which title was to pass to the society. It is ordinarily the duty of a trustee to insure property it holds for a remainderman. *Willis* v. *Hendry,* 127 Conn. 653, 661, 20 A. 2d 375. In that case the testator required that the life tenant pay the expenses of the "upkeep" of the house of which she was given the use and we held that this imposed on her the duty to insure it. In this case, no such provision appears. The duty to insure includes personal, as well as real, property; 2 Scott, Trusts, p. 933; 3 Bogert, Trusts & Trustees, § 599; and with reference to the personal property which the testatrix directed to be entrusted to the society it requires insurance

of such a nature and in such an amount as "an ordinarily prudent person . . . entrusted with the management of like property for another" would procure. *Willis* v. *Hendry,* supra. The duty of the trustee extends, however, only to personal property bequeathed by the testatrix and does not include insurance upon property of the society not received from her which it may place in the buildings on the premises.

The other claim of error of the society arises out of the provision that the real estate and tangible property given the trustee for the society's benefit "shall not be sold or otherwise disposed of while being used by such beneficiary, at least for fifty years from the date of my death." The trial court held that the trustee was required to hold the property, if used by the society, for at least fifty years and might continue to hold it and permit such use indefinitely thereafter in its discretion. The society contends that it is entitled to perpetual use of the property if it sees fit to continue that use. It points to two other provisions in the will in support of its contention: The will provided that the Homestead should not be sold "while used by any one of said beneficiaries, at least for fifty years," and in a later article the executor is given a general power to sell all of the testatrix' estate except a cemetery plot and the real estate and personal property previously mentioned in the will, "so long as the same be preserved for the purposes aforesaid, and also as may be hereinbefore limited." The ready answer to the contention of the society is that, had the testatrix intended that it should have perpetual use of the Homestead, there was no occasion to make any specific reference to the power of the trustee to sell it

after fifty years. The testatrix provided that if the society failed to "accept the bequest" or failed to use the property, of which "defaults" the trustee should be the "sole judge," all rights of the society to use the premises should "terminate" and upon such "nonacceptance or termination" of use by it certain hospitals might have the use of the property and, if they failed to use it as she intended, then it should be sold for the benefit of the trust. When she limited the general power of sale of the trustee so that the property could not be sold as long as it should be "preserved for the purposes aforesaid," she was no doubt referring to the continued use of it by the society or the hospitals; the last clause, "and also as may be hereinbefore limited," was a further exception to the general power of sale and clearly included the fifty-year limitation upon the sale of the Homestead. The words in the clause in question, "while being used by such beneficiary," the provision that the trustee should be the "sole judge" as to a "default" by the society in failing to use the property and the further provision for the alternative use by the hospitals, should that by the society terminate, do not permit the interpretation suggested, that the limitation upon the sale of the premises was only intended to require the trustee to hold the property in the event that the society should fail temporarily to use it at any time within the fifty-year period; should that occur, and the trustee should determine that it did not amount to a default, there would be no break in the continued use by the society. We find nothing in the will or in the surrounding circumstances which gives the society a perpetual use of the property and agree with the construction placed upon the provision by the trial court.

The appeal of The New Canaan Library calls in question certain rulings of the trial court with regard to its rights under the codicil to the will which devises to it certain land adjoining its property, "upon the condition and provided, however, that if said property shall not be used by said Library Association for the purposes of its organization, this devise shall terminate and the property become a part of my residuary estate, and possession thereof shall be immediately taken by my Executor or Trustee, without any demand therefor." The trial court held that the property would revert to the estate whenever the library ceased to make a substantial use of it for its purposes. The library claims that if it assumed the use of the land within a reasonable time after the settlement of the estate it acquired an absolute title to the property not subject to defeat in the future by a failure to use it and that it could thereafter sell or otherwise dispose of it as it saw fit. The difficulty with such an interpretation is the provision that if the premises shall not be used by it for its purposes "this devise shall terminate." "Terminate" means to "come to a limit in time; to end." Webster's New International Dictionary (2d Ed.). It implies that that which is brought to an end had previously existed. In her will the testatrix specifically provided for a disposition of the use of property by the historical society if it should "fail to accept" the gift made to it and, again, "upon the non-acceptance or termination" of the use by it. Had the provision in the codicil meant that the library had only to begin the use of the property within a reasonable time, that would have been equivalent to providing that if the library did not accept the gift the property would become a part of the residue of

the estate; and had she meant such a result it would have been natural for her so to specify, as she did as regards the gift to the historical society in the will. It is true that a fee once given will not be reduced by subsequent language unless the intent to do so is expressed in positive and unambiguous language; *Hull* v. *Hull,* 101 Conn. 481, 486, 126 A. 699; but here the gift is made in a single sentence which definitely creates an estate determinable upon the failure of the library to make use of the property. See *Bristol Baptist Church* v. *Connecticut Baptist Convention,* 98 Conn. 677, 686, 120 A. 497. We agree with the conclusion of the trial court that, whenever such a situation arises, the property would revert to the estate of the testatrix. That conclusion necessarily negatives the further contention of the library that, if it should at any time in the future seem desirable to locate the library elsewhere, it could sell the property and use the proceeds for that purpose.

The trial court further held that the library must make some substantial use of the property, but that if it does so it is not prohibited from renting a portion of it and applying the net income for its general purposes. The library claims that it may rent all of it. The word "use" has varying meanings. This is illustrated by two of our own decisions. In *Spooner* v. *Phillips,* 62 Conn. 62, 24 A. 524, where stock was transferred in trust for the "use" of a certain person, we said (p. 66) that the word in its ordinary meaning signifies "that which the thing will produce. If it is a house or other building, or any other form of real estate, it is the rent which can be obtained for it." See *Candee* v. *Connecticut Savings Bank,* 81 Conn. 372, 374, 71 A. 551. On the other hand, in *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 475, 34

A. 483, we pointed out (p. 482) that the legislature has given the word different meanings and held that an exemption from taxation of land "used" by the defendant for the purposes of its organization did not include premises leased to others, even though the income was used to further those purposes. The land here in question adjoins the property of the library. In making the gifts in the will to the historical society and, in the alternative, to the hospitals, there can be no doubt that the testatrix intended by the words "use" or "used" the actual possession of the premises in question by those institutions. We cannot escape the conclusion that in making the gift to the library the testatrix meant to give to the word "used" the same significance. The ruling of the trial court certainly gave to the association as broad rights as the language of the testatrix could be held to justify.

There is error in part, the judgment is set aside and the case is remanded with direction to enter a judgment in the terms of the judgment appealed from except as modified to accord with this opinion.

In this opinion the other judges concurred.