INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUF-
FEURS, WAREHOUSEMEN AND HELPERS OF AMERICA,
LOCAL UNION NO. 677 *v.* TRUDON AND PLATT
MOTOR LINES, INC.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued October 9—decided December 16, 1958

18

*Wallace Barnes,* with whom was *Sherwood L. Anderson III,* for the appellant (defendant).

*Norman Zolot,* for the appellee (plaintiff).

MELLITZ, J. The plaintiff brought an application for an order confirming two labor arbitration awards in accordance with General Statutes § 8160. From a judgment confirming the awards, the defendant has appealed.

The following facts are not disputed: On October 27, 1953, the parties entered into a collective bargaining agreement which was to govern their dealings between April 11, 1953, and April 11, 1955, and was subject to renewal. The agreement provided for the establishment of an arbitration committee, composed of an equal number of employer representatives and union representatives, to handle "[a]ny dispute that cannot be adjudicated between the Employer and the Union . . . the decision of the Committee to be final and binding on both parties." On February 15, 1955, the grievance committee rendered a decision dealing with a claim made by Thomas Tyndall, an employee of the defendant. Another dispute between the parties arose concerning Tyndall and Edward Fox, also an employee, and on April 4, 1955, they were discharged. As a result, the defendant's employees engaged in a work stoppage which lasted until April 22, on which date all, except

Tyndall and Fox, returned to work. On April 13, the defendant sent a letter to the plaintiff, and on April 18 a letter to the general arbitration committee, requesting arbitration concerning the discharges. On June 1, the plaintiff asked for arbitration regarding not only the discharges but also the rate to be paid Tyndall, claiming a violation of a provision of the agreement. The secretary of the arbitration committee advised the parties that owing to current contract negotiations the exact date of the next hearings had not been determined and that they would be informed of the date later. Another dispute arose concerning the termination of employment of Rocco Guerra on July 20, 1955. On August 11, the plaintiff requested a hearing of this case by the arbitration committee. On October 17, the parties were notified by the arbitration committee that there would be no hearings during the month of October. On November 15, they were notified that a hearing of the three cases would be held on November 21. On November 18, the defendant wrote the arbitration committee: "[W]e will not be present as the contract has expired." This letter was received on the date of the scheduled hearing. Although the defendant did not appear, the hearings proceeded as scheduled, written awards were made, and the parties were notified. The defendant failed to comply with either award. It is these awards which the plaintiff seeks to have confirmed.

The defendant attacks the validity of the awards and the action of the trial court in confirming them on the ground that the arbitrators were without authority to act in either dispute. In the controversy involving Fox and Tyndall, the defendant contends that the strike begun on April 4, 1955, was a material breach of the agreement which either

terminated the agreement or constituted sufficient ground to warrant nonperformance by the defendant of the arbitration obligations. This contention fails to take into account the broad character of the arbitration clause which the parties incorporated in their agreement. By its terms, they gave the arbitration committee authority to handle "[a]ny dispute that cannot be adjudicated between the Employer and the Union" and agreed that the decision of the committee was to be final and binding on both parties. It was an all-inclusive and unrestricted submission to arbitration of all disputes and disagreements which might arise between the parties and an agreement to accept as final and binding the decision of the arbitrators. In *Liggett* v. *Torrington Building Co.,* 114 Conn. 425, 430, 158 A. 917, where there was a submission of similar import, we said that it was "plain that the parties intended to submit to the arbitrators for decision all questions of law and fact arising out of the contract." Parties who set up their own private tribunal must be bound by the limits they themselves have fixed. *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205, 209, 70 A.2d 120. Moreover, even if it were found that the agreement was terminated, the parties would not be relieved of the obligation to arbitrate a dispute which arose while the agreement was in force. *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 10, 110 A.2d 464.; *Matter of Lane (Endicott Johnson Corporation),* 274 App. Div. 833, 834, 80 N.Y.S.2d 639, aff'd, 299 N.Y. 725, 87 N.E.2d 450. Admittedly, when the dispute with Fox and Tyndall arose the agreement between the parties was in effect.

The agreement included an unrestricted submission to arbitration of all unresolved disputes and a

provision that the decision of the arbitrators should be final and binding as to all matters properly within the submission. *Schoolnick* v. *Finman,* 108 Conn. 478, 481, 144 A. 41. By the terms of the submission, the decision of all issues raised as a result of the acts of the parties was lodged exclusively within the jurisdiction of the arbitrators. *Liggett* v. *Torrington Building Co.,* supra; *Matter of Lipman (Haeuser Shellac Co.),* 289 N.Y. 76, 80, 43 N.E.2d 817. Included in the submission were the issues raised by the defendant: whether the act of the plaintiff in conducting a strike was a material breach of the contract, and the effect of this occurrence on the rights and obligations of the parties. The basic test of the validity of an award of arbitrators lies in its conformity to the submission. *New Britain Machine Co.* v. *Lodge 1021,* 143 Conn. 399, 404, 122 A.2d 786. The award of the arbitrators in the dispute involving Fox and Tyndall was final and binding on the parties unless it was vulnerable on any of the grounds set forth in General Statutes §§ 8161-8163. No claim of this nature has been established by the defendant, and the plaintiff was entitled, under § 8160, to an order confirming this award.

In the dispute relating to Guerra, the position of the defendant is that the dispute arose on July 20, 1955, that the contract had expired on April 11, 1955, and that the defendant therefore was under no obligation to arbitrate. It is fundamental that the foundation for a valid arbitration proceeding is the existence of an agreement by the parties to abide by an award made in conformity with the submission. *Schoolnick* v. *Finman,* supra. Such an agreement for the submission of issues to arbitrators constitutes the charter of the entire arbitration proceedings, and defines and limits the issues to be de-

cided by the arbitrators. *Amalgamated Assn.* v. *Connecticut Co.,* 142 Conn. 186, 191, 112 A.2d 501.

The contract entered into by the parties was to govern their dealings between April 11, 1953, and April 11, 1955, but it specifically provided that it was to renew itself automatically from year to year unless one of the parties gave notice to the other, not less than sixty days prior to the expiration date, of a desire to change or amend the terms or conditions. In that event, the agreement was to continue in effect during the course of the negotiations for amendment or renewal. The plaintiff gave notice of its desire to change or amend the agreement. The defendant notified the plaintiff that its president would represent it in labor matters. Previously, and at the time the original agreement with the plaintiff was negotiated and signed, the defendant was a member of an organization known as the Motor Carriers Council, which carried on labor negotiations on behalf of its member employers, including the defendant. The defendant resigned from the council on March 1, 1955, but there is no finding that the plaintiff was ever notified of this fact. In previous years, bargaining conferences of the council were held in various cities in the southern New England area. In 1955, all New England local unions were to meet in Providence, Rhode Island, with all employers to negotiate a new agreement to cover the motor carrier field in New England. The practice was for a committee of the council to negotiate the contract, which, upon acceptance, became binding upon all members. The defendant was notified by letter dated March 11, 1955, that the meetings for negotiation of a new agreement would start at 10 a.m. on March 15 at the Sheraton-Biltmore Hotel in Providence and that it would be necessary for it to have its representative

at this and subsequent meetings. Negotiations were entered into on March 15 and continued until July 25, 1955, when an agreement was reached. After that, a new contract was signed.

The decision of the arbitrators was, by the specific terms of the agreement, "final and binding on both parties," but the arbitrators, in making the award, could not exceed their powers. General Statutes § 8161(d). If the dispute arose while the agreement was operative, the arbitrators had jurisdiction to decide it. Whether the agreement expired on April 11, 1955, or continued to be in effect when the Guerra dispute arose on July 20, 1955, was a jurisdictional issue necessarily involved in the decision of the arbitrators. *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 9, 110 A.2d 464; *Matter of Potoker (Brooklyn Eagle, Inc.),* 2 N.Y.2d 553, 141 N.E.2d 841, cert. denied, 355 U.S. 883, 78 S. Ct. 151, 2 L. Ed. 2d 113; *Matter of Lipman (Haeuser Shellac Co.),* 289 N.Y. 76, 80, 43 N.E.2d 817. The trial court sustained the decision of the arbitrators, and the question is whether the facts found and not successfully challenged support the court's conclusion that the contract continued in force. If the negotiation clause became operative, it effected an indefinite extension of the agreement, terminable by either party on reasonable notice. *Boeing Airplane Co.* v. *Aeronautical Industrial District,* 91 F. Sup. 596, 603, aff'd, 188 F.2d 356, cert. denied, 342 U.S. 821, 72 S. Ct. 39, 96 L. Ed. 621; 1 Williston, Contracts (Rev. Ed.) § 38; 17 C.J.S. 887, § 398; see *American Sugar Refining Co.* v. *Blake,* 102 Conn. 194, 200, 128 A. 523; *Marshall* v. *Partyka,* 98 Conn. 778, 781, 120 A. 507. When the plaintiff gave notice of a desire to change or amend the agreement, and the defendant followed with a notification to the plaintiff that it would thereafter be

represented by its president in labor matters, the conclusion is inescapable that both parties had in mind that a new agreement would be negotiated and that the existing agreement would continue in effect for some period after its expiration date by the operation of the negotiation clause. Neither party at any time thereafter gave notice to the other of a termination of either the agreement or negotiations for a new one. The defendant stood by and gave no notice that it claimed an expiration of the contract until November 18, three days after it received notice of the date fixed by the arbitrators for a hearing. On these facts, the court was correct in concluding that the arbitrators had not exceeded their powers and that the awards should be confirmed. That the defendant chose to ignore the hearings of the arbitrators, after due notice that they were to be held, did not affect their validity nor the right of the arbitrators to decide the dispute upon the evidence submitted to them. *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 64, 82 A.2d 345.

There is no error.

In this opinion DALY, C. J., BALDWIN and KING, Js., concurred.

MURPHY, J. (dissenting in part). The majority opinion is correct so far as it pertains to the dispute involving the employees Fox and Tyndall and I concur only as to them.

The dispute involving Guerra is separate and distinct from that concerning Fox and Tyndall. It did not arise until July 20, 1955, at which time there was no contract between the parties. There had been a contract prior to April 11, 1955, which covered the Fox and Tyndall discharges, since they occurred on April 4, 1955, during the life of the contract. Guerra

did not enter the defendant's employ until June 21, 1955.

The contract between the parties was for two years effective April 11, 1953, and was to renew itself annually unless written notice of a desire to amend or change the contract was given to the other party at least sixty days before any date of expiration. The contract then provided that its terms and conditions would continue in effect "[d]uring the course of negotiations for amendment or renewal," and that any changes with respect to wages would be retroactive. Had the union been content to act in accordance with the contract, the Guerra dispute might have been subject to arbitration. But in addition to giving the defendant written notice of its desire to change or amend the contract, the union went one step further and, in the notice, informed the defendant that the contract "will terminate on April 11, 1955." The first notice to this effect was dated January 24, 1955, and was followed by a second notice on March 11, 1955. The only logical conclusion which could be drawn from the unequivocal use of this language by the union was that the contract would end on April 11, 1955; see *Merchants Bank & Trust Co.* v. *New Canaan Historical Society,* 133 Conn. 706, 714, 54 A.2d 696; and thereafter there would be no agreement between the parties covering their labor relations.

The majority opinion, however, chooses to ignore, as the trial court did, the union's action in terminating the agreement, and predicates its conclusion that the Guerra dispute was subject to arbitration on the provision in the contract for the continuance of its terms and conditions "[d]uring the course of negotiations." There were no negotiations in 1955 between the union and the defendant or anyone au-

thorized to act for the latter. It is true that the Motor Carriers Council had previously represented the defendant and had negotiated the 1953 contract. As the defendant resigned from the council effective March 1, 1955, the council could not, without authority, negotiate for it. When the defendant resigned from the council, it notified the union that the president of the defendant would thereafter represent it in labor matters. The notice, sent by the union to the defendant on March 11, 1955, that employer representatives would meet with the New England teamsters unions neither obligated the defendant to send a representative to the meeting nor bound it by any agreement reached there. As there were no negotiations between the plaintiff and the defendant concerning a new contract, the old contract was not automatically extended after the union terminated it. Therefore, the Guerra dispute was not one which arose during the life of the contract or any bilateral extension of it and was not arbitrable.

It is difficult to understand the concluding paragraph of the majority opinion. It indulges in surmises and assumptions and completely disregards the action of the union in terminating the contract. The defendant took the union at its word and is now being penalized for having done so. That it made a mistake in not proceeding with the arbitration of the Fox-Tyndall matter, especially after it had requested the arbitration, should not nullify its defense in the Guerra case. Osmosis should not be held legally sufficient to create agency. Arbitration without representation is just as repugnant as taxation without representation. The award to Guerra should be set aside.