These cases arise from a construction contract by which M L Building Corporation (hereinafter "M L") was to construct a new headquarters building in Meriden, Connecticut for CNF Industries, Inc. (hereinafter "CNF".) The contract was dated March 5, 1991 and provided for a contract price of $2,550,000.00, for a three story 37,500 square foot and 20,500 square foot buildings. Completion was due on September 30, 1991.
On August 1, 1991, after commencement of work on the project, the relationship between the parties broke down. At such time the project had not been completed.
The agreement between the parties contained an arbitration clause which provided in pertinent part:
Article 7. Arbitration
7.1 Agreement to arbitrate. Claims, disputes and matters in question arising out of or relating to this agreement . . . shall be decided by arbitration. . . . . . .
7.6 Arbitrability. Any question of arbitrability shall be decided by the appropriate court and not by arbitration.
On August 1, 1991, CNF demanded arbitration under the contract and terminated M L for default.
On August 8, 1991, M L filed an answer and counterclaim in the arbitration.
The arbitrators, after hearings, entered an award dated April 9, 1992. Though CNF was awarded $101,503.31, on its claim, M L was awarded on its counterclaim $1,132,760.00, interest of $59,500.00, and attorneys' fees of $112,000.00. CNF was further ordered to pay expenses for the arbitration process.
M L seeks to confirm the award pursuant to Connecticut General Statutes 52-417, and CNF asks the court to vacate the award pursuant to Connecticut General Statutes 52-418. CT Page 5743
ARBITRABILITY
CNF Industries argues that the award of the arbitrators was not arbitrable and therefore should be vacated. CNF claims that the arbitrators rescinded the contract between CNF and M L and by doing so they threw out the arbitration clause thus wresting jurisdiction from the arbitrators. M L claims that even if the arbitrators rescinded the contract as suggested by CNF, the arbitration clause was severable and therefore the arbitrators still had jurisdiction to decide the dispute.
"`Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also.'" Welch Group, Inc. v. Creative Drywall, Inc., 215 Conn. 464, 467, 576 A.2d 153
(1990). There is no dispute that the contract between CNF and M L called for any question of arbitrability to be determined by the court. Article 7.6 of the parties' agreement states: "Any question of arbitrability shall be decided by the appropriate court and not by arbitration." Article 7.6 (Exhibit A, CNF's Motion to Vacate the Arbitrator's Award).
CNF claims that the question of arbitrability did not arise until after the arbitrators rendered their decision. CNF asserts that the arbitrators "threw out" or rescinded the contract at the request of M L thereby nullifying the arbitration clause, leaving the arbitrators without jurisdiction. The authority for this proposition cited by CNF is the case of Metcalfe v. Talarski, 213 Conn. 145,567 A.2d 1148 (1989), in which the court held that "[t]he effect of a rescission is to extinguish the contract . . . [which] waives the right to sue on it." Metcalfe, supra, 159. The claim is that since the contract was rescinded, the arbitration clause was thrown out with it and therefore the arbitrators were without jurisdiction to hear the case.
M L's position is, assuming arguendo that the contract was thrown out as CNF suggests, that the arbitration clause was severable and survived despite the rescission. M L relies on two cases in which the Connecticut Supreme Court held that the arbitration clause was severable and survived termination of the contract. The two cases are International Brotherhood v. Trudon and Platt Motor Lines, Inc., 146 Conn. 17, 147 A.2d 484 (1958) and Batter Building Materials Co. v. Kirschner, 142 Conn. 1,110 A.2d 464 (1954). In Batter, the court held that "`[t]he contract is not put out of existence [by a repudiation or total breach], though all further performance of the obligations undertaken by each party in favor of the other may cease. It survives for the purpose of measuring the claims arising out of the breach, and the arbitration clause survives for determining the mode of their settlement. The purposes of the contract have failed, but the arbitration CT Page 5744 clause is not one of the purposes of the contract.'" Batter, supra, 10. In International Brotherhood, supra, the court held that "even if it were found that the agreement was terminated, the parties would not be relieved of the obligation to arbitrate a dispute which arose while the agreement was in force." International Brotherhood, supra, 20.
Neither of the cases cited by M L is directly on point. In Batter, supra, the court found that if the contract was breached or repudiated, not rescinded, the arbitration clause would still be given effect. While in International Brotherhood, supra, the court found that if the contract terminated by its own terms, the arbitration clause would still be enforced if the dispute arose during the life of the contract. In the case at bar, the question is what effect would rescission have on the arbitration clause. The cases do reflect the deference and respect afforded the arbitration process by Connecticut courts. Waterbury Board of Education v. Water Teachers Assn., 168 Conn. 54, 62, 357 A.2d 466
(1975). Our supreme court, in a case cited by both CNF and M L, considered, but did not answer this question. In A. Sangivanni Sons v. F.M. Floryan Co., 158 Conn. 467,262 A.2d 159 (1969), the court stated that "[t]he question [of] whether the plaintiff could enforce the arbitration clause if it sought rescission instead of damages is not before us. Note, 91 A.L.R.2d 936, 942. We are only required to hold under the circumstances that where rescission is not sought by the defrauded party, the arbitration clause remains enforceable." A. Sangivanni Sons, supra, 472.73. The court's reference to the American Law Reports Second, provides a case that sheds light on the subject.
In Housekeeper v. Lourie, 333 N.Y.S.2d 932 (1972), the New York Supreme Court, Appellate Division, discusses the effect of fraud in the inducement of an agreement to arbitrate. The court in Housekeeper, supra, stated:
 The right to demand and compel arbitration of a controversy or dispute presupposes the existence of a valid and enforceable agreement for arbitration and challenge in court may be made to the existence of such an agreement. . . . `Simply put, the legal existence of the arbitral tribunal depends on contract. It is from that agreement between the parties that their very being, or jurisdiction and power to act, derives. Unless such contract, when seasonably challenged, is declared valid and enforceable, therefore, the arbitral tribunal can never legally come into being.'
Housekeeper, supra, 936-937. In Housekeeper, the New York court went on to state that "[when] there is a prima facie showing of an issue as to whether there exists a valid and binding agreement for arbitration and such issue is timely and properly CT Page 5745 raised, it is to be determined by the court." Housekeeper, supra, 398 (Emphasis added). The issue, if timely raised, must first be determined by the court because if the court finds that the fraud in the inducement vitiates the agreement, no binding agreement to arbitrate exists.
In the case at bar the question is not whether there was fraud in the inducement, but whether rescission of a contract nullifies an agreement to arbitrate contained in the contract. The court's reasoning in Housekeeper, supra, can be applied to the facts in the case at bar. In Housekeeper the court found that if fraud in the inducement vitiated the entire contract the arbitration clause would not stand. In the case at bar, the rescission would have the same effect as the fraud in the inducement. Therefore, if the question of rescission was timely raised it must be determined by the court.
M L argues that even if the arbitration clause is not severable and the claim was not arbitrable, CNF has waived its right to raise the question of arbitrability because the issue was not timely raised. In response to this CNF claims that it could not have known that the dispute would not be arbitrable until after the award was rendered. CNF claims that it was not aware that M L was seeking to rescind the contract until they received M L's Memorandum of Law on the second to last day of the arbitration (April 1, 1992). See Supplemental Brief of CNF Industries, Inc. In Support of its Application to Vacate or Modify Arbitration Award, p. 4.
The court finds that CNF had knowledge that M L was seeking to have the contract rescinded prior to April 1, 1992, the date M L filed its memorandum of law in the arbitration proceeding. As early as January 17, 1992, CNF had notice that M L would be seeking to rescind the contract. See Exhibit E, CNF's Motion to Vacate the Arbitrators' Award. In a letter dated January 17, 1992, Steven Kaplan, attorney for M L, writes "[i]t is boilerplate law that having `thrown out' the contract with its wrongful termination, CNF can no longer seek or utilize the protection of contractual clauses." Id, p. 2. In a letter dated January 20, 1992, Attorney Wenick, attorney for CNF, responded to Attorney Kaplan's letter stating, "M L urges the Arbitrators to `throw out' the contract, because M L seeks to recover the extraordinary additional costs which M L incurred as a result of its mismanagement of its subcontractors, costs which bear no relationship to the value of work. M L's approach is contrary to Section 6.6 of the contract and contrary to applicable law." Exhibit F, CNF's Motion to Vacate the Arbitrators Award. This correspondence demonstrates that CNF had knowledge that M L would seek to rescind the contract and could not claim surprise by M L's memorandum on the second to last day of the arbitration CT Page 5746 hearing. The court in New Britain v. Connecticut State Board of Mediation and Arbitration, 178 Conn. 557,424 A.2d 263 (1979), discussed waiver and stated:
 [T]his court observed that its respect for the autonomy of the arbitration process `dictates that we recognize the waiver principle' and cautioned that' [t]he effect of this recognition is to place a burden upon the parties, in the situation where the question of arbitrability is not [expressly] reserved to the arbitrator, to frame the submission carefully . . . and, if necessary to protect their objections, to seek judicial reconciliation of [such] threshold questions prior to submitting to arbitration.'
New Britain, supra, 560-61. In the case at bar, the question of arbitrability was not expressly reserved to the arbitrators, but by contract was for the court to decide. CNF was aware that M L would attempt to rescind the contract during the arbitration proceeding but did nothing. CNF should have raised the issue of rescission to the court before the question was submitted to the arbitrators. By its failure to do so, CNF waived its right to later contest the issue.
AWARD CONFORMS TO THE SUBMISSION
CNF claims that the damages that the arbitrators awarded did not conform to the submission and that the award failed to "draw its essence from the agreement."
 The scope of judicial review of an arbitration award is limited by General Statutes 52-418 and by the terms of the contract between the parties. Specifically, review is limited to a comparison of the award with the submission and to a determination of whether the award conforms to the submissions. The submission defines the scope of the entire arbitration proceedings by specifically delineating the issues to be decided and no matter outside the submission may be included in the award. The court may not review the award for errors of law or fact. . .The burden of demonstrating the nonconformity of the award to the submission is on the party seeking to vacate the award.
Board of Education v. Hartford Federation of School Secretaries,26 Conn. App. 351, 352-54, — A.2d (1992) (citations omitted.) "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." Hudson Wire Co. v. Winsted Brass Workers Union, 150 Conn. 546, 553, 191 A.2d 557 (1963). CNF's submission CT Page 5747 to the arbitrators was as follows: "Claimant seeks money damages arising out of respondent's [M L] default under a construction contract dated March 5, 1991." CNF's Demand for Arbitration (Exhibit B, CNF's Motion to Vacate the Arbitrators' Award). CNF also submitted a copy of the contract as part of its submission to the arbitrators. M L's submission, as contained in its Answer and Counterclaim dated August 8, 1991, is as follows:
 On August 1, 1991, M L Building Corp.'s contract for the construction of CNF's corporate headquarters in Meriden was wrongfully terminated by the owner. M L Building is owed contract balances and retainage [sic], plus delay damages, damages for extra work, damages for lost profits, and consequential damages as a result of the owner's wrongful termination of its contract, including punitive damages for the owner's tortious and intentional breach of contract. Alternatively, in part, in regard to the damages for breach of contract, M L Building Corp. is owed the reasonable value of all of the labor and materials it provided for the owner up to and including August 1, 1991, as well as consequential damages as a result of the owner's wrongful termination of its contract, including punitive damages for the owner's tortious and intentional rescission of the contract.
Exhibit C, CNF's Motion to Vacate the Arbitrators' Award. (Emphasis added).
CNF claims that the award should be vacated because it does not draw its essence from the contract as part of the submission. CNF claims that the damages awarded are controlled by Article 6.6 of the contract and that the arbitrators awarded damages outside the scope of Article 6.6.
Article 6.6 states:
 If the Contractor wrongfully exercises any option under this Article, the Contractor shall be liable to the Subcontractor solely for the reasonable value of work performed by the Subcontractor prior to the Contractor's wrongful action, including reasonable overhead and profit, less prior payments made.
Article 6.6 (Exhibit A, CNF's Motion to Vacate the Arbitrator's Award). CNF claims that the arbitrators awarded damages in rescission and not pursuant to Article 6.6 of the contract as submitted.
As set out above, M L submitted that it should receive damages for contract balances owed and for the reasonable value of all of the labor and materials it provided for the owner up to and CT Page 5748 including August 1, 1991 (the termination date). The arbitrators' award is as follows:
 2. On the counterclaim, the Arbitrators find the issues for the Defendant, M L Building Corp., in the amount of one million, one hundred thirty-two thousand seven hundred sixty and 00/100 ($1,123,750.00) dollars, plus interest to date in the amount of fifty-nine thousand, five hundred ($59,500.00) dollars, plus attorney's fees of one hundred twelve thousand ($112,000.00) dollars. The Arbitrators further find that the discharge of the contractor by the owner was wrongful but not tortious, malicious or wanton.
Arbitrator's Award, para. 2, (Exhibit I, CNF's Motion to Vacate the Arbitrators' Award). CNF claims that the most M L should be able to receive on its counterclaim is $470,237, the figure that CNF claims to be the value of the work provided up to the day of termination. Brief of CNF Industries, Incorporated in Support of Its Application to Vacate or Modify Arbitration Award, p. 23.
As set forth in the arbitrators' award the arbitrators found the issues for ML. Reading this would suggest that the arbitrators found that the contract was rescinded, as argued in M L's arbitration memorandum and suggested by CNF, and that the arbitrators awarded damages outside the scope of Article 6.6.
CNF ignores the submission contained in the agreement which provides for arbitration of all disputes "arising out of or relating to this agreement." This broad submission is not inconsistent with the award which resolved all disputes arising out of and related to the agreement.
The agreement which established this arbitration process for the parties is a private consensual contract. Our supreme court has recognized a distinct policy of judicial restraint in reviewing private consensual arbitration clauses. "We have recognized that when arbitration is consensual, rather than statutorily imposed, judicial review is limited in scope. . . .If the parties mutually agree to submit their dispute to arbitration, the resulting award is not reviewable for errors of law or fact. . . Judicial review of unrestricted submissions is limited to a comparison between the submission and award to see whether, in accordance with the powers conferred upon the arbitrators, their award conforms to the submission." New Haven v. AFSCME, 208 Conn. 411, 415-16,544 A.2d 186 (1988), Hartford v. Board of Mediation and Arbitration, 211 Conn. 7, 14, 557 A.2d 1236 (1989).
The parties by contract "submitted" all disputes "arising out of or related to the contract" to arbitration. The parties allowed CT Page 5749 the arbitrators to resolve the claim of contract rescission.
The Connecticut Supreme Court has held "this court has for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation." Bridgeport v. Bridgeport Police Local 1159, 183 Conn. 102,107, 438 A.2d 1171 (1981); O G/O'Connell Joint Venture v. Chase Family Limited Partnership No. 3, 203 Conn. 133, 145,523 A.2d 1271 (1987).
The parties submitted all disputes including rescission claims, to arbitration and have an award in conformity with their submission.
M L seeks in addition to the confirmation of the arbitrator's award, interest on the award from the date of the award to the date of the court's order confirming the award. Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 701-702,590 A.2d 957 (1991), clearly recognizes the court's discretion under Connecticut General Statutes 37-3a to award such interest.
In view of the substantive issue of contract rescission raised by CNF before the court, a reasonable issue existed as to when it was clear such money as was awarded was payable. Exercising equitable discretion, interest is denied from the date of the award to the date of this judgment.
The award is ordered confirmed.