The Connecticut Union of Telephone Workers,
Inc. *v.* The Southern New England
Telephone Company

Murphy, Mellitz, Shea, Devlin and Longo, Js.

Argued December 8, 1960—decided March 21, 1961

*Daniel Baker,* for the appellant (plaintiff).

*Donald F. Keefe,* with whom were *John Lashnits, William L. F. Felstiner* and, on the brief, *Robert S. Medvecky,* for the appellee (defendant).

MELLITZ, J. The plaintiff union brought this application, pursuant to the provisions of General Statutes § 52-410, for an order directing the defendant company to proceed with arbitration of an alleged dispute which the union claimed was arbitrable under the provisions of their collective bargaining agreement. The court denied the application, and the union has appealed from the judgment.

The union and the company have been parties to a series of collective bargaining agreements since about 1940. The wage relationships of the majority of the company employees represented by the union have been determined in accordance with job evaluation plans developed by the company and introduced in 1942 or 1943. Job evaluation is defined as: "(1) The determination of the value of each job in the Company in relation to other comparable jobs in the Company or (2) the determination of the value of each job in a group in the Company in relation to other jobs in the group." For each position which is subject to evaluation the company publishes a job description. Jobs are evaluated on the basis of point values allocated to each of eight specified criteria or factors, including such factors as general knowledge, job knowledge, and mental application. For each factor there is a minimum and maximum of allowable points. Upon the institution of a new job or a change in one already established, the company determines, on the basis of comparison with other jobs, the number of points to be allocated to each of the eight factors. The salary for the job is determined by the total of the point values so at-

tributed. In 1943, an appeal procedure was added to the plan, and in 1945, the entire plan, including the appeal procedure, was incorporated into the collective bargaining agreement.

A job evaluation appeal is processed at three levels, referred to as stages 1, 2 and 3. Stage 1 provides for a meeting with the employee's supervisor and a review by the supervisor with the departmental job evaluation analyst for the purpose of enabling the parties to reach a mutually agreeable solution. If a solution satisfactory to the employee is not reached in stage 1, there is, in stage 2, a further meeting, participated in by higher ranking representatives of the union and the company, "and the requirements of the position shall be fully discussed . . . with the object of satisfactorily closing the appeal on the basis of the information discussed." If a solution satisfactory to the employee is not reached in stage 2, it is provided, in stage 3, that union and company committees "shall jointly discuss all phases of the case . . . . Following the hearings and discussions it shall be the obligation of the joint committee to reach a mutually satisfactory conclusion, and that decision will be final." In 1957, the company re-evaluated the job of sales engineer. The sales engineers were dissatisfied with the re-evaluation, and the union requested the company to negotiate concerning a salary increase for the job. The company took the position that the request should be handled through the job evaluation appeal procedure, and the matter was referred to stage 2 of that procedure. Discussions proceeded through stage 3, and when it appeared, after a number of meetings, that no progress had been made by the joint committee in reaching a mutually satisfactory conclusion, the union requested that the matter be

referred to arbitration under article XVIII of the collective bargaining agreement. Article XVIII, the general arbitration provision, provides, in its pertinent part: "In the event that any dispute or controversy concerning the true intent and meaning of a provision of this Contract, or a question as to the performance of any obligation hereunder, or any grievance as defined in Article XI arises and cannot be satisfactorily settled by negotiations . . . the matter shall be arbitrated upon written request of either party to the other . . . ." Article XI sets up a grievance procedure in four steps and provides for arbitration, under article XVIII, of any grievance not settled in step four. It is conceded that the dispute here is not a grievance within article XI. The company challenged the arbitrability of the dispute, and the court sustained its contention. The sole issue in the case is whether, under the collective bargaining agreement, a job evaluation dispute is referable to arbitration under article XVIII over the objection of one of the parties.

The contention of the union is that the court erred in holding that the question of arbitrability was for the court to determine, and in holding that there was no bona fide dispute or controversy within the meaning of article XVIII. The union cites and relies upon the holdings in *International Brotherhood* v. *Trudon & Platt Motor Lines, Inc.*, 146 Conn. 17, 21, 147 A.2d 484, and *Liggett* v. *Torrington Building Co.*, 114 Conn. 425, 430, 158 A. 917. In each of these cases the arbitration provision was expressed in broad, all-embracing terms. In the *Trudon & Platt* case, supra, 20, arbitration was required where there was "[a]ny dispute that cannot be adjudicated between the employer and the Union." In the *Liggett* case, supra,

430, the agreement called for submission of "[a]ll questions in dispute and all claims arising out of said contract." In each case, the arbitration agreement was held to encompass arbitration of every unresolved dispute.

Arbitration is a creature of contract. It is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed. *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205, 209, 70 A.2d 120. The arbitration provision in an agreement is, in effect, a separate and distinct agreement. Courts of law can enforce only such agreements as the parties actually make. *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591, 595, 96 A.2d 209. The parties may, if they choose, confide to arbitrators the decision of legal as well as factual disputes. *Colt's Industrial Union* v. *Colt's Mfg. Co.,* 137 Conn. 305, 307, 77 A.2d 301. When they do so, the arbitrators may have the authority to interpret the provisions of the agreement which are involved in, or applicable to, the facts of the dispute submitted. *United Electrical Radio & Machine Workers* v. *Union Mfg. Co.,* 145 Conn. 285, 289, 141 A.2d 479. This does not necessarily mean that the arbitrators are also empowered to determine the preliminary question of arbitrability. Whether the parties have agreed to submit to arbitration not only the merits of the dispute but the very question of arbitrability, as well, depends upon the intention manifested in the agreement they have made. No one is under a duty to submit any question to arbitration except to the extent that he has signified his willingness. *Colt's Industrial Union* v. *Colt's Mfg. Co.,* supra, 308. The construction of the agreement and the

determination of the intent expressed therein present an issue for the court. *Connecticut Co.* v. *Division 425,* 147 Conn. 608, 616, 164 A.2d 413; *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* supra.

Whether a dispute is an arbitrable one is a legal question for the court rather than for arbitrators, in the absence of a provision in the agreement giving arbitrators such jurisdiction. The parties may manifest such a purpose by an express provision or by the use of broad terms such as were employed in the *Trudon & Platt* and *Liggett* cases, supra. See *Application of Affiliated Coat & Apron Supply Co.,* 153 N.Y.S.2d 970, 975, aff'd, 2 App. Div. 2d 671, 153 N.Y.S.2d 976; *Greyhound Corporation* v. *Division 1384,* 44 Wash. 2d 808, 271 P.2d 689. But unless they do, the determination of the question of the arbitrability of a particular dispute is the function of the court. See *United Steelworkers* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583 n.7, 80 S. Ct. 1347, 1363, 4 L. Ed. 2d 1409, 1432; *Lodge No. 12* v. *Cameron Iron Works, Inc.,* 257 F.2d 467, 470 (5th Cir.), cert. denied, 358 U.S. 880, 79 S. Ct. 120, 3 L. Ed. 2d 110; *Local No. 149* v. *General Electric Co.,* 250 F.2d 922, 927 (1st Cir.) cert. denied, 356 U.S. 938, 78 S. Ct. 780, 2 L. Ed. 2d 813; *Coleman Co.* v. *International Union,* 181 Kan. 969, 978, 317 P.2d 831; *McCarroll* v. *Los Angeles County District Council of Carpenters,* 49 Cal. 2d 45, 65, 315 P.2d 322, cert. denied, 355 U.S. 932, 78 S. Ct. 413, 2 L. Ed. 2d 415; *Philadelphia Marine Trade Assn.* v. *International Longshoremen's Assn.,* 382 Pa. 326, 336, 115 A.2d 733, cert. denied, 350 U.S. 843, 76 S. Ct. 84, 100 L. Ed. 751. Here, the language of the arbitration agreement specifically limits arbitration to particularily enumerated areas of controversy.

The obligation to arbitrate under article XVIII is confined to disputes which fall within these specific areas. Whether a dispute does fall within one of these areas and thus is a proper subject for arbitration is for the court. There is nothing in the language of the arbitration agreement to warrant the conclusion that the company agreed that arbitrators were to have jurisdiction to determine, in addition to the items specifically enumerated, the question whether a particular dispute was arbitrable under the agreement.

Whether questions concerning job evaluation are arbitrable under article XVIII of the agreement is a matter of contract interpretation. The determinant is to be found in the intention of the parties, ascertained from the language used, interpreted in the light of the circumstances surrounding the making of the agreement. *Connecticut Co.* v. *Division 425*, supra; *United Aircraft Corporation* v. *O'Connor*, 141 Conn. 530, 538, 107 A.2d 398; 3 Williston, Contracts (Rev. Ed.) § 629; Restatement, 1 Contracts § 235, comment d. The arbitration provision in article XVIII was first adopted in 1942. Subsequently, the parties formulated specific procedures for dealing with what they conceived to be two distinct forms of controversies—grievances and job evaluation questions. The grievance procedure was written into the contract before the adoption of the job evaluation appeal procedure and establishes four steps, after which arbitration may be had as prescribed in article XVIII. By contrast, the job evaluation appeal procedure contains but three stages. It does not provide for ultimate resolution in arbitration and stipulates, instead, that it shall be the "obligation of the joint committee to reach a mutually satisfactory conclusion, and that decision

will be final." This procedure was initially adopted in 1943 and was incorporated into the collective bargaining agreement by reference in 1945. In 1950, the arbitration clause was amended. "[A]ny grievance as defined in Article XI" was then for the first time specifically made subject to arbitration, but no change or reference to arbitration was made in the provisions relating to job evaluation appeals. The two separate procedures which the parties had designed to deal with the different types of controversies have thus been continuously retained.

The court found that it was "the intent of the parties, as expressed in the plain language which they employed and supported by the circumstances surrounding the execution of the collective bargaining agreement, to obtain finality in job evaluation appeals" at stage 3 of the appeal procedure and that they did not intend to add arbitration as a fourth stage. It concluded that differences of opinion concerning the company's application of the various judgment factors involved in the job evaluation process, the weight to be given specific factors under the plan, and the proper evaluation and salary rate for the job of sales engineer were not intended to be resolved by arbitration. These conclusions are warranted by the clear language employed by the parties, and the court properly refused to add to the contract, by interpretation, a provision for arbitration as a fourth stage of the job evaluation appeal procedure. Terms cannot be added to a contract by interpretation. *Ziulkoski* v. *Barker,* 94 Conn. 491, 494, 109 A. 185; *Williams* v. *Lilley,* 67 Conn. 50, 59, 34 A. 765. The contract expressly made stage 3 the final step of the job evaluation appeal procedure, and it was not for the court to import another and different final step.

*Whitaker* v. *Cannon Mills Co.,* 132 Conn. 434, 440, 45 A.2d 120; *Straus* v. *Kazemekas,* 100 Conn. 581, 593, 124 A. 234. Courts of law must allow parties to make their own contracts. With the wisdom or desirability of the provision they themselves have agreed upon the court is not concerned. *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591, 595, 96 A.2d 209; *Lakitsch* v. *Brand,* 99 Conn. 388, 393, 121 A. 865; *Zaleski* v. *Clark,* 44 Conn. 218, 223. The court was not in error in concluding that differences concerning a job evaluation are not arbitrable under article XVIII of the agreement.

The union has assigned error in a number of rulings on evidence. The court admitted, over objection by the union, evidence of the practical construction of the agreement by the parties over a long period of time. There was no ambiguity in the language of the agreement which required resort to evidence of the acts of the parties as an aid in arriving at the meaning of the agreement, and the evidence objected to should not have been received. *Boucher* v. *Godfrey,* 119 Conn. 622, 628, 178 A. 655. The admission of this evidence, however, could not have been harmful in view of the clearly expressed intent of the language of the agreement itself, as already pointed out. In another ruling, the court permitted in evidence testimony that in collective bargaining negotiations in 1957, before the job evaluation appeal with which this case is concerned was started, the union expressed dissatisfaction with the operation of the appeal provisions, principally because employees had no recourse beyond stage 3 to an impartial third person or arbiter for a decision; that the union attempted to bargain for the addition of a fourth stage in the appeal

procedure to provide for arbitration of disputes which could not be settled by discussion in stage 3; and that the efforts of the union were unsuccessful and a new contract was signed with no change in the job evaluation appeal procedure. The testimony was admitted as evidence of conduct on the part of the union inconsistent with its present claims. The ruling was correct. "[C]onduct of a party to the proceeding, in respect to the matter in dispute, whether by acts, speech, or writing, which is clearly inconsistent with the truth of his contention, is a fact relevant to the issue." *State* v. *Willis,* 71 Conn. 293, 306, 41 A. 820; *Bartolotta* v. *Calvo,* 112 Conn. 385, 395, 152 A. 306; *Nichols* v. *New Britain,* 77 Conn. 695, 698, 60 A. 655; *Wheeler* v. *Thomas,* 67 Conn. 577, 579, 35 A. 499; *White* v. *Portland,* 63 Conn. 18, 25, 26 A. 342. It was proper for the company to show that the position taken by the union during the negotiations leading up to the contract was inconsistent with the contention now advanced by it. Other rulings on evidence assigned as error were correct and require no discussion.

There is no error.

In this opinion the other judges concurred.