INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, A.F.L.–C.I.O. *v.* GENERAL ELECTRIC COMPANY

BALDWIN, C. J., KING, MURPHY, SHEA and BORDON, Js.

Argued May 9—decided September 26, 1961

*Bertram Diamond,* for the appellant (plaintiff).

*Norman K. Parsells,* with whom, on the brief, was *John Barron,* of the District of Columbia bar, for the appellee (defendant).

KING, J. This case involves a controversy as to the arbitrability of a grievance under the provisions of a five-year labor management contract, hereinafter referred to as the contract. It was entered into as of August 15, 1955, between the defendant and the plaintiff, of which an affiliated local was the exclusive bargaining representative for such of the defendant's employees as were involved in the controversy. The grievance arose out of the defendant's action in giving to an independent contractor the job of moving the fan manufacturing department from one part of the defendant's Bridgeport plant to another. The defendant apparently acted in reliance on the general rule concerning the power of management to contract out work, in good faith. Note, 57 A.L.R.2d 1399. The plaintiff did not deny the defendant's general right to contract out the work but claimed that certain "skilled trades" employees of the defendant who belonged to the plaintiff's local should have been employed on the re-

moval job to the extent of performing the portion of the job which consisted of the type of work which they normally performed and properly could perform. The parties, after going through the preliminary grievance procedure required by the contract, remained in disagreement. The plaintiff demanded arbitration under the arbitration provisions of the contract.

The contract (art. 15 [1] [a]) made arbitrable "[a]ny grievance . . . which involves . . . the interpretation or application of a provision of this Agreement." It provided (art. 15 [2] [b]) that if either party indicated that an unresolved grievance "does not, in its opinion, raise an arbitrable issue," no arbitration could be had until the grievance had been held arbitrable in a final judgment in a court. The defendant claimed that the grievance in question was not arbitrable, and the plaintiff instituted this application to the Superior Court, under General Statutes § 52-410, for an order directing the defendant to proceed with arbitration. Without such a court determination of arbitrability, the defendant, under the foregoing provisions of the contract, admittedly was under no obligation to arbitrate the dispute. The defendant demurred to the application as amended. The demurrer was sustained and, the plaintiff failing to plead further, judgment was rendered for the defendant on January 8, 1960. The judgment in effect denied the application on the ground that the dispute was not arbitrable. The plaintiff appealed.

The demurrer attacks the application as a whole (see Practice Book § 96) and, as drafted, is divided into three grounds. The second ground, as well as the third, comprises a number of claims which to a considerable extent are repetitious and overlapping.

The defendant in its brief sets forth various reasons why the application failed to state facts showing that the dispute was arbitrable, but does not clearly relate these reasons to the purported three grounds of the demurrer. In an endeavor to expedite this litigation, we have decided to review the action of the court below in sustaining the demurrer on the basic ground that as matter of law the application failed to allege an arbitrable dispute. See *Anselmo* v. *Cox,* 135 Conn. 78, 79, 60 A.2d 767.

The first ground of demurrer in effect merely asserts that the controversy alleged in the application does not present an arbitrable issue involving the interpretation or application of a provision of the contract. Since under General Statutes § 52-92 all demurrers must be special, under no theory could the demurrer properly have been sustained on the first ground, and we need give that ground no further consideration. See cases such as *Cornwall* v. *Hartford,* 107 Conn. 351, 353, 140 A. 723.

We turn now to the second and third grounds of demurrer. The effect of the demurrer was to admit the material allegations of the application to which it was addressed. *Arsenault* v. *General Electric Co.,* 147 Conn. 130, 132, 157 A.2d 918, cert. denied, 364 U.S. 815, 81 S. Ct. 42, 5 L. Ed. 2d 46 (a case, incidentally, involving the same contract). "The allegations of the . . . [application] attacked by . . . [a] demurrer must be 'tested by the facts provable under them.' We must give to them the same favorable construction that a trier might deem itself required to give in admitting evidence under them to prove the facts asserted." *McNish* v. *American Brass Co.,* 139 Conn. 44, 48, 89 A.2d 566. Stated in another way, "[t]he demurrer admitted any facts provable under . . . [the allegations of the applica-

tion]." *Stamford Dock & Realty Corporation* v. *Stamford,* 124 Conn. 341, 345, 200 A. 343; *Progressive Welfare Assn., Inc.* v. *Morduchay,* 124 Conn. 485, 490, 200 A. 813. Thus, the decisive question is whether, within the purview of the allegations of the application, the plaintiff could prove facts showing that the grievance was arbitrable. If it could, then the demurrer was erroneously sustained.

The parties are in dispute as to the law governing the determination of the arbitrability of the grievance under the provisions of the contract. The plaintiff claims that the applicable law is to be found in certain federal cases hereinafter discussed, while the defendant claims that the applicable law is that of New York as set forth in certain decisions of the Court of Appeals and of the Appellate Division of the Supreme Court. Obviously, the validity of the demurrer cannot properly be determined until the question of what law controls the construction of the contract has been decided.

The contract provided (art. 15 [4]) : "This Agreement and its interpretation and application shall in all respects be governed by the law of the State of New York." The contract by its preamble covered the plaintiff's locals in shops and factories of the defendant throughout the United States. It is clear that the provision as to the applicability of the law of New York was inserted in order that the law of that state alone would apply, regardless of where a particular controversy involving the contract might arise. To what extent this provision was effective to make applicable the statutory or detailed procedural law of New York we need not inquire, since both parties are voluntarily proceeding under the Connecticut arbitration statutes and no

claim is made by either under any New York statute. See *McCarroll* v. *Los Angeles County District Council of Carpenters,* 49 Cal. 2d 45, 63, 64, 69, 315 P.2d 322, cert. denied, 355 U.S. 932, 78 S. Ct. 413, 2 L. Ed. 2d 415. But for certain considerations hereinafter mentioned, the provision would have been effective to make at least the substantive case law of New York operative and controlling in this controversy. *Pollack* v. *Danbury Mfg. Co.,* 103 Conn. 553, 557, 131 A. 426.

Subsequent to the decision of the court below, the Supreme Court of the United States, on June 20, 1960, decided two cases involving the question of the arbitrability of disputes under the variant wordings of the arbitration clauses in two different labor management contracts. These cases were *United Steelworkers* v. *American Mfg. Co.,* 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403, and *United Steelworkers* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409. On the same day, a decision as to the powers of an arbitrator under the terms of the submission under such a contract was rendered in *United Steelworkers* v. *Enterprise Wheel & Car Corporation,* 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424. See, also, the concurring opinion in *Warrior* and *American Mfg.,* reported in 363 U.S. 569, 80 S. Ct. 1363, 4 L. Ed. 2d 1432. The *Warrior* case, like the case now before us, involved the arbitrability of a grievance arising out of the contracting out of work. These federal cases did not change the well-settled rule, as stated in *Warrior,* supra, 582, that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." But they do hold that a suit to compel arbitration is a suit to determine "wheth-

er the reluctant party has breached his promise to arbitrate." Ibid. Where, as here, that promise is contained in a labor management contract which affects interstate commerce *(Lavery's Main St. Grill, Inc.* v. *Hotel Employees Union,* 146 Conn. 93, 101, 147 A.2d 902), such a suit is a suit for a violation of a contract, and jurisdiction to entertain it is given to the United States District Courts under the provisions of § 301 (a) of the Labor Management Relations Act, 1947 (Taft-Hartley Act), 61 Stat. 156, 29 U.S.C. § 185(a). In other words, this proceeding could, and more properly should, have been instituted in the United States District Court for the district of Connecticut. *Ingraham Co.* v. *Local 260,* 171 F. Sup. 103, 106; *Minkoff* v. *Scranton Frocks, Inc.,* 172 F. Sup. 870, 874, aff'd, 279 F.2d 115. The plaintiff had a right, however, to bring it in the Superior Court, as it did. *Connecticut Co.* v. *Division 425,* 147 Conn. 608, 616, 164 A.2d 413; *Philadelphia Marine Trade Assn.* v. *International Longshoremen's Assn.,* 382 Pa. 326, 333, 115 A.2d 733, cert. denied, 350 U.S. 843, 76 S. Ct. 84, 100 L. Ed. 751; 31 Am. Jur. 655, § 329.

But of even more importance is the fact that the United States Supreme Court, in *Warrior,* supra, promulgated a new and broader rule of law governing the construction of arbitration provisions when, as here, they are contained in a labor management contract as distinguished from an ordinary commercial contract between business establishments. See, also, *Lodge No. 12* v. *Cameron Iron Works, Inc.,* 292 F.2d 112, 116 (5th Cir.). This rule is that "the judicial inquiry [as to the scope of an arbitration clause in a labor management contract] . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate

the grievance . . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior*, supra, 582. As pointed out in Mr. Justice Whittaker's dissent, this is a change in the general law previously laid down by the United States Supreme Court as to the construction of contract clauses providing for arbitration. Id., 587. It differs from the law of New York. *Matter of International Assn. of Machinists (Cutler-Hammer, Inc.)*, 297 N.Y. 519, 520, 74 N.E.2d 464; *Matter of General Electric Co. (United Electrical Radio & Machine Workers)*, 300 N.Y. 262, 264, 90 N.E.2d 181; *Matter of Otis Elevator Co. (Carney)*, 6 N.Y.2d 358, 361, 160 N.E.2d 630. It also differs from that of Connecticut. *Colt's Industrial Union* v. *Colt's Mfg. Co.*, 137 Conn. 305, 308, 77 A.2d 301; *Niles-Bement-Pond Co.* v. *Amalgamated Local 405*, 140 Conn. 32, 36, 97 A.2d 898; *International Brotherhood* v. *Trudon & Platt Motor Lines, Inc.*, 146 Conn. 17, 20, 147 A.2d 484; *Arsenault* v. *General Electric Co.*, 147 Conn. 130, 133, 157 A.2d 918 (involving the same contract as the present case); *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.*, 148 Conn. 192, 197, 169 A.2d 646. Indeed, it is virtually without precedent. See note, 24 A.L.R.2d 752.

That the rule applies to actions brought, as this more properly should have been, in the federal courts under the provisions of § 301 (a) of the Labor Management Relations Act, 1947 (61 Stat. 156, 29 U.S.C. § 185 [a]), is not open to question. *Textile Workers Union* v. *Lincoln Mills*, 353 U.S.

448, 456, 77 S. Ct. 912, 1 L. Ed. 2d 972. The United States Supreme Court, in *Warrior,* supra, 578, based the new rule on considerations of policy which it found in the Labor Management Relations Act, 1947. Clearly, this policy could not be affected or in any way changed because the litigants chose to have a state court rather than a federal court adjudicate the arbitrability of a grievance. Indeed, the policy would be thwarted if inconsistent state rules were allowed to nullify it whenever the parties chose a state court for the enforcement of an arbitration clause in a labor management contract. *Ingraham Co.* v. *Local 260,* 171 F. Sup. 103, 106. Unless, and until the United States Supreme Court holds otherwise, the rule promulgated by it, both on principle and on authority, must be held to be the law of the land in suits such as this, whether brought in federal courts or in state courts. *Warrior,* supra, 577; *Textile Workers Union* v. *Lincoln Mills,* supra; *McCarroll* v. *Los Angeles County District Council of Carpenters,* 49 Cal. 2d 45, 60, 315 P.2d 322; 36 C.J.S. 365; see *Volunteer Electric Cooperative* v. *Gann,* 41 CCH Lab. Cas. ¶ 16,537 (Tenn. App.). If, and to the extent that, the new rule is inconsistent with the law of New York, which was the law which the contract here made applicable, it changed the law of New York as regards such a controversy as this, in the same way as a decision to the same effect rendered at the same time by the Court of Appeals of New York would have changed it.

The defendant seems to claim that the provision in the contract as to the law of New York preserved that law notwithstanding the new rule announced by the United States Supreme Court. It may be that by apt language the contract could have pro-

vided that litigation concerning it would be governed by the law of New York as it stood at the time the contract was executed. However, no such language was used. The effect of the contract provision, as written, was to make applicable the law of New York as it stood from time to time during the life of the contract. As already pointed out, the law of New York was changed by the new rule promulgated by the United States Supreme Court. As far as the interpretation of the arbitration provisions of this contract is concerned, that is the law which is now the law of New York, as it is of every other state, and that is the law which governs and controls the construction of this contract. *Textile Workers Union* v. *Lincoln Mills,* supra. It would have been so whatever state law the parties had agreed should be applicable. See *Shirley-Herman Co.* v. *International Hod Carriers,* 182 F.2d 806, 809 (2d Cir.), 17 A.L.R.2d 609 & note, 614, 625 § 8, 627 § 10; *General Electric Co.* v. *Local 205,* 353 U.S. 547, 548, 77 S. Ct. 921, 1 L. Ed. 2d 1028; *McCarroll* v. *Los Angeles County District Council of Carpenters,* supra; *Volunteer Electric Cooperative* v. *Gann,* supra. In *United Steelworkers* v. *American Mfg. Co.,* 363 U.S. 564, 567, 80 S. Ct. 1343, 4 L. Ed. 2d 1403, the court expressly criticized, as contrary to the policy manifested in § 203 (d) of the Labor Management Relations Act, 1947 (61 Stat. 154, 29 U.S.C. § 173 [d]),[1] the rule of *Matter of International Assn. of Machinists (Cutler-Hammer, Inc.),* 271 App. Div. 917, 67 N.Y.S.2d 317, aff'd, 297 N.Y. 519, 74 N.E.2d 464, in so far as it held that "[i]f the meaning of the

---

[1] "Sec. 203(d). Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. . . ."

provision of the contract sought to be arbitrated is beyond dispute, there cannot be anything to arbitrate and the contract cannot be said to provide for arbitration." In other words, under the new federal rule, a court should not deny an order for arbitration merely because it does not think the provision of the contract sought to be submitted to arbitration is open to any real dispute.

It remains to determine whether, under the foregoing federal law, the demurrer was properly sustained for any of the reasons set forth in the second and third grounds.

The main claim under the second ground of demurrer is that the grievance is not arbitrable because there is no provision of the contract which expressly or impliedly prohibits the defendant from contracting out work. Actually, neither in this case nor in *Warrior*, supra, was there any provision directly dealing with the defendant's power to contract out work. But the mere absence of a prohibitory provision was a wholly inadequate ground of demurrer. Under the applicable federal law, the question was whether it could be said with positive assurance that the arbitration clause was not susceptible of an interpretation which covered the alleged dispute. Id., 582. At least in the absence of a provision, express or implied, clearly removing from the general arbitration clause the contracting out of work, it could not be said as matter of law that the dispute was not arbitrable. It follows that the court was in error in sustaining the demurrer on this second basic ground.

As a sort of subordinate or incidental ground of demurrer, the defendant has included, not only in the second ground but also in the third, a claim that certain allegations of the application as to "normal"

past practices in similar situations amount to allegations of "local understandings," which, under article 21 (3) of the contract, cannot be considered in arbitration proceedings unless they have been reduced to writing and signed by both the union and the company. On a trial, it may turn out that this claim has merit. See cases such as *Local 201* v. *General Electric Co.*, 283 F.2d 147, 148 (1st Cir.). But this cannot be determined on demurrer, because so to do would be to equate "normal" past practices with "local understandings," as the term is used in the contract. There is nothing in *Local 201* v. *General Electric Co.*, supra, which necessarily strengthens the defendant's present position with respect to its demurrer. The holding there was that article 21 of the contract, the same contract as we are considering, made the dispute in question clearly non-arbitrable, since the dispute was based on "local understandings" which had not been reduced to writing and signed by both parties.

The third ground of demurrer attempts, in its phraseology, to compress, to an even greater extent than the second, a variety of reasons into one ground. Primarily, it asserts that the grievance was not arbitrable because as matter of law the plaintiff's claims were contrary to the so-called "rights of management" provisions of the contract.

The arbitration clause in the contract required (art. 15 [1] [a]) the submission to arbitration of an unresolved grievance involving "the interpretation or application of a provision of this Agreement." It was further provided (art. 15 [3] [a]) that "no arbitrator shall have any authority to add to, detract from, or in any way alter the provisions of this Agreement" and (art. 15 [3] [b]) "no arbitrator shall have the authority to establish or modify any

wage, salary or piece rate, or job classification, or authority to decide the appropriate classification of any employee." The contract contained a provision (art. 14) that there should be no strikes or lockouts, in connection with matters subject to the grievance procedure, during that procedure and any subsequent arbitration. See *Warrior,* supra, 583.

Although the contract contained what at first blush appears to be a strong management clause (art. 26 [b]), which states that the company "retains the exclusive right to manage its business, including (but not limited to) the right to determine the methods and means by which its operations are to be carried on, to direct the work force and to conduct its operations in a safe and effective manner," it is further provided that that clause "does not modify or limit the rights of the parties, or of the employees, under any other provisions" of the contract. The present controversy does involve claims under other provisions of the contract.

It is also important to note that the arbitration clause is not limited to disputes as to the application of provisions of the contract but also includes disputes as to their interpretation. The importance of the difference between the two terms is well explained in our own case of *Colt's Industrial Union* v. *Colt's Mfg. Co.,* 137 Conn. 305, 307, 77 A.2d 301.

The application alleged that the defendant, before entering into the contract for the removal of the fan department, solicited the views of a spokesman for the union to which the employees of the proposed independent contractor belonged and was informed by him that if any of the work on the contract was assigned to the defendant's own employees (i.e., members of the plaintiff union), there would be a strike by the members of the union to which the em-

ployees of the independent contractor belonged. The application alleged that the action of the defendant in yielding to the strike threats of the outside union and in failing to give the work to the defendant's own employees was discriminatory and in bad faith, and improperly deprived the defendant's employees of work to which they were entitled. The application further claimed that this action of the defendant, allegedly taking place after the institution of grievance procedure, was a breach of the provision of the contract (art. 14 [2]) forbidding the transfer of any job which is under dispute or is being processed under the grievance procedure.

As already pointed out, the main thrust of the demurrer, especially on the third ground, is that the grievance is not arbitrable, nor even bona fide, since the plaintiff's claims amount to an attempt to interfere with, or qualify, the general right of management to contract out work. Apart from any question of bona fides,[2] this view, which the court below adopted, might very likely have been a sound one under the law of New York as it has been pronounced by the Court of Appeals—that an arbitrable dispute is a dispute (1) clearly made arbitrable by the terms of the contract and (2) involving a real and bona fide ground of dispute. *Matter of General Electric Co. (United Electrical Radio & Machine Workers)*, 300 N.Y. 262, 264, 90 N.E.2d 181. The difficulty is that this New York case law, for the reasons already pointed out, is no longer the controlling law of New York in a case such as this, nor is it applicable in the determination of the arbitrability of the instant grievance. The new rule

[2] As to the arbitrability of the issue of bona fides under New York law, see *Matter of Otis Elevator Co. (Carney)*, 6 N.Y.2d 358, 361, 160 N.E.2d 630.

promulgated by the United States Supreme Court necessarily supersedes any inconsistent case law of New York or any other state.

Under the now controlling federal law, the court below could not properly decide that the foregoing management provisions of the contract clearly excluded the grievance from the operation of the general arbitration clause. *Warrior, supra,* 584. It necessarily follows that the court was in error in sustaining the demurrer on the third ground. Especially is this so in view of the allegations of the application as to discrimination and bad faith. See *Matter of Otis Elevator Co. (Carney), supra.*

In short, on both the second and the third grounds of demurrer, the defendant persuaded the trial court, and urges this court, to have what is termed, in *American Mfg., supra,* a "preoccupation with ordinary contract law." Rather, it is our clear duty to follow the law of the land as laid down by the United States Supreme Court. Under that law, the dispute would be held arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the . . . dispute. Doubts should be resolved in favor of coverage." *Warrior, supra,* 582.

The plaintiff assigns error in the action of the court below in expunging an amendment to its application which amplified the statement of the grievance and incorporated into the application the rules of the American Arbitration Association. Under the contract (art. 15 [1]), a grievance is arbitrable only if it "remains unsettled after having been fully processed pursuant to the provisions" of article 13, which sets forth the grievance procedure. It necessarily follows that after the grievance has been first presented and has begun to be processed

it cannot thereafter be materially changed, at least without the consent of the parties, since if it were so changed it would cease to be a "fully processed" grievance and would become a new grievance, partially, at least, unprocessed, and as such would be clearly nonarbitrable. If the amplifying amendment materially changed the statement of the grievance, the motion to expunge was properly granted. On the other hand, if the amendment did not change, actually and materially, the statement of the grievance, there could have been no harmful error in expunging it. See *Local 63* v. *Cheney Bros.,* 141 Conn. 606, 613, 109 A.2d 240, cert. denied, 348 U.S. 959, 75 S. Ct. 449, 99 L.Ed. 748 (pointing out the importance of clarity in the statement of the submission of a grievance). There was no harmful error in expunging the amendment in so far as it amplified the statement of the grievance. Any right of amplification which might exist under the rules of the American Arbitration Association could have no materiality prior to the adjudication of arbitrability. Without such an adjudication, the rules, by the terms of the contract, could have no possible application to the controversy, since its arbitrability would not have been established. There was no error in the granting of the motion to expunge the amendment in so far as it sought to incorporate in the application rules not yet relevant or applicable.

There is error, the judgment is set aside and the case is remanded with direction to overrule the demurrer.

In this opinion the other judges concurred.