HUDSON WIRE COMPANY, WINSTED DIVISION *v.*
WINSTED BRASS WORKERS UNION, LOCAL 1603,
INTERNATIONAL UNION OF UNITED AUTOMO-
BILE, AIRCRAFT AND AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued March 7—decided May 28, 1963

*John A. Arcudi,* for the appellant (defendant).

*William J. Larkin 2d,* for the appellee (plaintiff).

BALDWIN, C. J.   This action was brought pursuant to General Statutes § 52-418 to vacate an arbitration award rendered on a union grievance which, over the company's protest that the grievance was not arbitrable, had been submitted to an arbitrator designated in the compulsory arbitration clause of the parties' collective bargaining agreement.   The trial court held that the grievance was not arbitrable and rendered judgment for the company. The union has appealed.

The facts may be stated in summary as follows: On January 20, 1959, the company and the union entered into a collective bargaining agreement which covered rates of pay, hours of work and other employment conditions for all production and maintenance employees at the company's Winsted plant. The agreement, which was to remain in effect until November 11, 1961, contained the following

pertinent provisions. "ARTICLE II—EMPLOYEES COVERED The provisions of this agreement shall cover, and the term 'employees' used . . . shall mean all production and maintenance employees . . . excluding executives, office and clerical and professional employees, guards, engineering department and all other supervisory employees as defined in the Act [Labor Management Relations Act, 1947, 61 Stat. 138, 29 U.S.C. § 152 (11)]. . . . ARTICLE VI—GRIEVANCE PROCEDURE 1. Steps in Prompt Disposition of Grievances (a) . . . Fourth —In the event that the parties are unable to agree on a grievance dealing with the application and/or interpretation of this contract such grievance may be submitted for arbitration to an arbitrator agreed to by the parties as provided in Amendment A [designating eligible arbitrators] and the decision of the said arbitrator shall be final and binding on both parties. . . . ARTICLE VIII—NO STRIKE, NO LOCKOUT During the term of this agreement the Company shall not lock out and the Union or its representatives or agents, including stewards, shall not sanction or authorize any strike, suspension of work or slowdown on the part of the employees contrary to the terms of this agreement. . . . ARTICLE XVII—MANAGEMENT CLAUSE The Management of the business and the direction of the working forces is vested exclusively in the Company, including the right to hire, transfer, promote, retain or discharge for just cause, maintain quality and efficient operation, to relieve employees from duties because of lack of work, to determine methods, processes and means of manufacture, schedules of production, introduce new or improved methods or facilities and to extend, limit or curtail its operations, subject to the terms of this agreement. The

terms and conditions of this Agreement shall in no way, directly or indirectly, be interpreted to mean that the Company is restricted in any way from securing from any source whatsoever, its materials, machinery and equipment nor is the Company limited in its choice of contractors and transportation facilities."

The company shut down the Winsted plant from July 18 to August 8, 1960, for its annual three-week vacation. During this shutdown it became necessary to undertake some production for a special order. The company proposed to recall for employment during the final week of the shutdown twenty-two employees who were not eligible for a third week of paid vacation. The union refused to assent to the recall of these employees and insisted that seniority be observed in any work done during this period. The company then decided to run a much smaller operation to turn out the special order and to employ for this purpose three foremen to work in the enamel room on a limited basis during the last week of the shutdown. Again, on September 1 and 2, 1960, during an inventory shutdown, a foreman was put to work in the enamel room doing a job ordinarily performed by members of the union. On September 6, 1960, the union filed a grievance in which it complained that during the shutdowns of July 18 to August 8 and September 1 and 2, 1960, foremen were assigned to perform work which replaced "regular operators" and that these work assignments were a breach of contract.[1] This grievance was thereafter duly proc-

---

[1] The statement of grievance read: "Aug 1st thru Aug 5th, Management assigned Enamel Room foreman 3 (three) ovens at #44 plus 5 hds of fine wire — These foreman ran these machines while the regular operators were either laid-off or on vacation.

essed through the contract-established grievance machinery and finally was submitted on November 10, 1960, to an arbitrator, who held a hearing on December 9, 1960. At this hearing, the company contended that the grievance was not arbitrable because it concerned the use of personnel not covered by the contract and because their use was permissible under the management clause (art. 17) of the contract. The arbitrator, however, ruled that the grievance was arbitrable.

It can be assumed from the position taken by both parties that the company is engaged in an industry affecting interstate commerce. See Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. § 185. Therefore, the disposition of the case is governed by federal substantive law. *Local 174* v. *Lucas Flour Co.,* 369 U.S. 95, 102, 82 S. Ct. 571, 7 L. Ed. 2d 593. This law is enforceable in the state courts. *Charles Dowd Box Co.* v. *Courtney,* 368 U.S. 502, 506, 82 S. Ct. 519, 7 L. Ed. 2d 483; see *International Union* v. *General Electric Co.,* 148 Conn. 693, 700, 174 A.2d 298. The criteria for determining whether the grievance in the case at bar was arbitrable under federal law were laid down in *United Steelworkers* v. *American Mfg. Co.,* 363 U.S. 564, 567, 80 S. Ct. 1343, 4 L. Ed. 2d 1403, and *United Steelworkers* v. *Warrior & Gulf Navigation*

Union contends foreman performed work which replaced regular operators — which is a breach of contract. Sept. 1 & 2 foreman again replaced regular operators by running 2 ovens at #44 — they also replaced the watchman. For the past two months the Drawing Room foreman has displaced the Wire Dispatcher by performing a major percentage of his duties."

So much of the grievance as pertained to the replacement of the watchman and the wire dispatcher was resolved by the arbitrator in favor of the company. Neither party has questioned the award on these issues.

*Co.,* 363 U.S. 574, 584, 80 S. Ct. 1347, 4 L. Ed. 2d 1409. See *International Union* v. *Cardwell Mfg. Co.,* 304 F.2d 801, 802 (10th Cir.); *International Union* v. *General Electric Co.,* supra. The contract had (art. 6 [1] [a] [4]) a compulsory arbitration clause covering all disputes "dealing with the application and/or interpretation" of the contract. It also had (art. 8) a "no strike, no lockout" provision. The inclusion of these two clauses with their broad, sweeping language requires us, under the federal rule, to resolve all doubts in favor of arbitrability. The company claims that, because the contract contains no express provision concerning the use of supervisory personnel for production work, the dispute concerning their use does not involve the interpretation or application of the contract. Under the federal rule, the silence of the contract on a particular feature of the employer-employee relationship does not preclude arbitration. In negotiating the labor management agreement, the negotiators, it can be assumed, did not and could not foresee, and therefore make provision for, every possibility of future disagreement. It is to be presumed that the settlement of disputes arising out of situations in the employer-employee relationship either not specifically or not fully covered in the contract were left for the application of the practices, the "common law," of the industry or of the particular shop. *United Steelworkers* v. *Warrior & Gulf Navigation Co.,* supra, 580-82; see *Local 1078* v. *Anaconda American Brass Co.,* 149 Conn. 687, 691, 183 A.2d 623 (concurring opinion). The company contends further that the management clause, which reserves to the company the control of the work force, prevents the contract from being construed so as to forbid the

employment of foremen in production work. This contention defeats itself by invoking a clause of the contract to resolve a dispute and, thereby, necessarily treating the dispute as one which involves "the application and/or interpretation" of the contract. It cannot be successfully argued that the management clause in this contract so conclusively settles the issue that there is nothing to arbitrate. As we held in *International Union* v. *General Electric Co.*, supra, 704, under the federal rule a court cannot deny arbitration because it thinks that the provision of the contract concerned is not open to any real dispute. This is not to say, however, that a labor-management contract cannot be so drawn as to exclude from arbitration claimed managerial functions, so long as they are clearly and specifically described. See *United Steelworkers* v. *Warrior & Gulf Navigation Co.*, supra, 584.

Since the trial court held that the grievance was not arbitrable, it had no occasion to consider whether the award was within the submission. We need not remand the case for the court's decision on that issue if it can be determined as a matter of law on the record before us. We regard the grievance drafted by the union and processed through the grievance machinery to be the submission which shaped the arbitrator's authority. *Local 1078* v. *Anaconda American Brass Co.*, supra, 689, and cases cited. That grievance submitted to the arbitrator the question whether the contract was breached by the employment of foremen to do the enamel room work which was assigned to them by the company. A submission to compulsory arbitration is not an approval in advance of any decision which the arbitrator might reach. *International Assn. of Machinists* v. *Hayes Corporation*, 296 F.2d 238,

242 (5th Cir.); see Wellington, "Judicial Review of the Promise to Arbitrate," 37 N.Y.U. L. Rev. 471, 483. The contract expressly provided (art. 6 [1] [a] [4]) that the decision of the arbitrator should be final and binding on both parties. Such a provision does not allow the arbitrator to go outside the terms of the submission. *Local 1078* v. *Anaconda American Brass Co.*, supra; see *Textile Workers Union* v. *American Thread Co.*, 291 F.2d 894, 896 (4th Cir.). "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers* v. *Enterprise Wheel & Car Corporation*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424. The arbitrator filed an extended memorandum setting forth the process of his reasoning and the bases of his award. We may disagree with both, but unless his memorandum patently shows an infidelity to his obligation, the result reached by the award, and not the memorandum, controls. *United Steelworkers* v. *Enterprise Wheel & Car Corporation*, supra, 598; see *Von Langendorff* v. *Riordan*, 147 Conn. 524, 527, 163 A.2d 100; *American Brass Co.* v. *Torrington Brass Workers' Union*, 141 Conn. 514, 522, 107 A.2d 255.

The award was that (1) the union's action in arbitration was properly brought under the agreement and (2) the company's action with respect to the employment of foremen in the enamel room

violated the agreement. The award then ordered the payment of wages, for the time the foremen worked, to enamel room employees having seniority under the contract. This award was clearly within the submission.

There is error, the judgment is set aside and the case is remanded with direction to render judgment dismissing the plaintiff's application and confirming the award.

In this opinion the other judges concurred.