POLICEMEN'S AND FIREMEN'S RETIREMENT BOARD OF
THE CITY OF NEW HAVEN ET AL. *v.* DONALD R.
SULLIVAN ET AL.

NEW HAVEN POLICE UNION LOCAL 530 ET AL. *v.*
THE CITY OF NEW HAVEN

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

1

Submitted on briefs December 9, 1976—decision released
April 26, 1977

*W. Paul Flynn,* on the briefs, for the appellants
(defendants in the first case and plaintiffs in the
second case).

*Dennis L. Pieragostini,* office of the corporation
counsel, on the briefs, for the appellees (plaintiffs in
the first case and defendants in the second case).

Longo, J.  Since these cases arise from the same
factual situation and since they have been treated
as companion cases throughout the course of their
development we shall treat them in a single opinion.

In the first case the plaintiffs, the Policemen's and Firemen's Retirement Board of the city of New Haven and the city of New Haven, sought an injunction, which was granted by the Superior Court, restraining and prohibiting the defendants from initiating or proceeding with arbitration. In the second case, the plaintiffs, New Haven Police Union Local 530 and Council 15, AFSCME, AFL-CIO, sought an order, which was denied, directing the defendant to proceed with arbitration. Local 530, Donald R. Sullivan and James Jackson appealed from the judgment in the first case and both unions appealed from the judgment in the second case.

The parties filed a stipulation of facts applicable to both cases from which the following summary may be drawn: Sullivan and Jackson are city of New Haven police officers who suffered injuries in the course of their employment, whereupon they applied for disability retirement and were rejected by the Policemen's and Firemen's Retirement Board. Instead, they were offered less strenuous duty, which they refused. The New Haven Police Union Local 530, of which Sullivan and Jackson were members, initiated a grievance pursuant to the procedure provided in an agreement between the city of New Haven and the New Haven Police Union Local 530 and Council 15, AFSCME, AFL-CIO, hereinafter referred to as the agreement, and claimed that the dispute should go to arbitration under the terms of the agreement. The Policemen's and Firemen's Retirement Board of the city of New Haven and the city of New Haven instituted an action in Superior Court seeking an injunction restraining Officers Sullivan and Jackson, Local 530 and the Connecticut Board of Mediation and Arbitration from proceeding with arbitration. The

unions, on the same date, filed an action to compel the city to proceed with arbitration. The issues posed by these appeals are whether the court erred in ruling that Local 530 and Council 15 were not entitled to an order directing the city to proceed with arbitration and in ruling that the defendants in the first case were enjoined from seeking arbitration.

The first question requiring resolution is whether the issue of the arbitrability of the grievance is a question for the court or for the arbitrator to decide. The determination of this issue requires a preliminary examination of the agreement and the grievance procedure provided therein. The grievance procedure established by article 3 of the agreement consists of a four-step process, the last step of which provides: "If the complainant and his representative, if represented, are not satisfied with the decision rendered, he or his representative may submit the grievance to the Connecticut State Board of Mediation and Arbitration, and the decision rendered by the arbitrator(s) shall be final and binding upon both parties." In order to invoke article 3, the claimant must have a grievance, which is defined by article 3 (b) as follows: "A grievance for the purpose of this procedure shall be considered to be an employee or Union complaint concerned with: (1) Discharge, suspension or other disciplinary action. (2) Charge of favoritism or discrimination. (3) Interpretation and application of rules and regulations and policies of the Police Department. (4) *Matters relating to the interpretation and application of the Articles and Sections of this Agreement.*" (Emphasis added.) The unions, Sullivan and Jackson seek to reach arbitration through the application of part 4 of article 3 (b). They contend

that the dispute involves the interpretation or application of the agreement since it involves a determination of the applicability and interpretation of article 15 of the agreement. Article 15 states: "Section 1. Police Pension Plan #1, and all amendments thereto, shall continue to be the Police Pension for all members of the Department employed prior to December 31, 1957. Section 2. Police Pension Plan #2, and all amendments thereto, shall continue to be the Police Pension for all members of the Department employed on or after January 1, 1958." If article 15 were intended by the parties to the agreement to incorporate the provisions of the pension plans in the agreement, then it would appear that the determination of the pension claims of Sullivan and Jackson would be matters relating to the interpretation and application of the articles and sections of the agreement. This final issue, however, need not be reached if we decide that the question of arbitrability is enough to send the dispute to arbitration.

The agreement sets forth the boundaries of the disputes the parties have agreed to submit to arbitration in article 3, step 4 (e), which states in part: "The arbitrator(s) jurisdiction to make an award shall be limited by the submission and confined to the interpretation and/or application of the provisions of this Agreement." It is clear that by using the broad language of this provision the parties intended to allow submission of legal, as well as factual, questions to the arbitrators. The authority to allow arbitrators to resolve legal questions is clearly established in our law. *United Electrical Radio & Machine Workers* v. *Union Mfg. Co.,* 145 Conn. 285, 141 A.2d 479; *Colt's Industrial Union* v. *Colt's Mfg. Co.,* 137 Conn. 305, 77 A.2d 301. Grant-

ing the arbitrator's authority to resolve legal questions, however, does not automatically require that the issue of arbitrability go to arbitration. As we stated in the leading case of *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.*, 148 Conn. 192, 197, 169 A.2d 646: "Whether the parties have agreed to submit to arbitration not only the merits of the dispute but the very question of arbitrability, as well, depends upon the intention manifested in the agreement they have made. No one is under a duty to submit any question to arbitration except to the extent that he has signified his willingness." We stated further (p. 198): "Whether a dispute is an arbitrable one is a legal question for the court rather than for arbitrators, in the absence of a provision in the agreement giving arbitrators such jurisdiction. The parties may manifest such a purpose by an express provision or by the use of broad terms." Such broad terms were found to exist in a case where the contract called for the submission to arbitration of " '[a]ny dispute that cannot be adjudicated between the Employer and the Union' "; *International Brotherhood* v. *Trudon & Platt Motor Lines, Inc.*, 146 Conn. 17, 20, 147 A.2d 484; and where arbitration was required of "[a]ll questions in dispute and all claims arising out of said contract"; *Liggett* v. *Torringon Building Co.*, 114 Conn. 425, 430, 158 A. 917. Shortly after we decided *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.*, supra, we decided *International Union* v. *General Electric Co.*, 148 Conn. 693, 174 A.2d 298, in which we applied the controlling federal law as declared in *United Steelworkers of America* v. *American Mfg. Co.*, 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403, and *United Steelworkers of America* v. *Warrior & Gulf Navi-*

*gation Co.,* 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409, to a dispute involving interstate commerce. We quoted from *Warrior,* supra, 582, the rule that "the judicial inquiry [as to the scope of an arbitration clause in a labor management contract] . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance . . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *International Union* v. *General Electric Co.,* supra, 700–701. Though it was our duty in that case, and in *Hudson Wire Co.* v. *Winsted Brass Workers Union,* 150 Conn. 546, 191 A.2d 557, to apply the federal rule; *Textile Workers Union* v. *Lincoln Mills,* 353 U.S. 448, 456, 77 S. Ct. 912, 1 L. Ed. 2d 972; this court has subsequently indicated its approval of application of the *Warrior* rule to situations in which Connecticut law applied. In the recent case of *Board of Police Commissioners* v. *Maher,* 171 Conn. 613, 621, 370 A.2d 1076, in ruling that the board of mediation and arbitration was authorized by the agreement presently under consideration to arbitrate a grievance concerning disciplinary action against a New Haven police officer, this court stated: "[T]he trial court correctly concluded that the bargaining agreement conferred on the defendant board the authority to arbitrate disciplinary grievances. *International Brotherhood* v. *Trudon & Platt Motor Lines, Inc.,* 146 Conn. 17, 21, 147 A.2d 484; *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205, 209, 70 A.2d 120. This is especially true since any '[d]oubts [concerning arbitrability] should be resolved in favor of cover-

age.' *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583, 80 S. Ct. 1347, 4 L. Ed. 2d 1409; *International Union* v. *General Electric Co.,* 148 Conn. 693, 701, 702, 174 A.2d 298." Despite our acceptance of the federal rule favoring arbitration, we are unpersuaded that the language of this agreement requires that we send the question of the arbitrability of the dispute to arbitration. The question of arbitrability is not one which requires a court to interject its presence into the merits of a labor dispute. Rather, the question of arbitrability is purely a question of contract interpretation in which courts have expertise and an historically established role to play. Indeed, in discussing the leading federal case of *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* supra, the United States Supreme Court stated that pursuant to a grievance procedure submitting to arbitration "all disputes between the parties 'as to the meaning, interpretation and application of the provisions of this agreement'"; *United Steelworkers of America* v. *American Mfg. Co.,* supra, 565; the question of arbitrability should be resolved by the court. The court stated in *Warrior,* supra, 583 n.7: "It is clear that under both the agreement in this case and that involved in . . . [*United Steelworkers of America* v. *American Mfg. Co.,* 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403] the question of arbitrability is for the courts to decide. Cf. Cox, Reflections Upon Labor Arbitration, 72 Harv. L. Rev. 1482, 1508–1509. Where the assertion by the claimant is that the parties excluded from court determination not merely the decision of the merits of the grievance but also the question of its arbitrability, vesting power to make both decisions in the arbitrator, the claimant must bear the burden of a clear demonstration of that

purpose." We can find no such clear demonstration in the present case where the arbitrator's power is "limited by the submission and confined to the interpretation and/or application of the provisions of this Agreement."

Having determined that the court was correct in ruling that it had the authority to decide whether the dispute should go to arbitration, we must now turn to the issue whether it properly decided that issue against sending the dispute to arbitration. By requesting the lower court to issue an injunction restraining the defendants in the first case from proceeding with arbitration, the retirement board and the city were, in effect, asking the court to interpret the substantive provisions of the agreement. As the court stated in *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, supra, 585: "[T]he court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement." We are also mindful of the court's distinction in *Warrior,* supra, 578, between arbitration of commercial and labor disputes. The court stated: "In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself." This court must, therefore, look carefully at any order which seeks to interject a judicial body into the functioning of the collective bargaining

process. As we stated in *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* 168 Conn. 54, 64, 357 A.2d 466: "Arbitration is a creature of contract. *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.,* 148 Conn. 192, 197, 169 A.2d 646. The continued autonomy of that process can be maintained only with a minimum of judicial intrusion."

Under the grievance procedure established by the agreement "[m]atters relating to the interpretation and application of the Articles and Sections of this Agreement" are considered grievances subject to arbitration under step four of the grievance procedure. Since there is no claim that the parties have not complied with the procedural requirements of the grievance procedure, the only question confronting us is whether there is doubt that the dispute should not go to arbitration. If there is any doubt, the issue must be resolved in favor of arbitration. *Board of Police Commissioners* v. *Maher,* supra.

We conclude that the trial court did not err in deciding that the parties did not intend that disputes involving disability retirement should be the subject of arbitration under the procedure established by article 3 of the agreement. Those seeking arbitration argue that the parties to the agreement, by agreeing to article 15 of the agreement, intended to incorporate the provisions of the two police pension plans mentioned therein into the agreement. We do not agree. Article 15 merely states which pension plans shall apply to which employees and states nothing about the provisions of either. Further, the pension plans were not established by the agreement, but were created by special act. The police officers, Sullivan and Jackson, fall into the category of employees covered by Special Acts 1957,

No. 531, entitled "An Act Establishing a Pension Fund for New Haven Policemen and Firemen Employed after December 31, 1957." Section 2 of No. 531 of the 1957 Special Acts states, in part: "The management and administration of the pension plan are hereby vested in a pension board, which shall consist of seven members." The pension board is a distinct entity which was not made a party to the agreement and could not, therefore, have agreed to grant its powers to an arbitrator, who derives his powers from the agreement. Further, the provisions of article 15 of the agreement may be compared to those of article 17, § 1, of the agreement by which "[t]he City agrees to continue to provide for the member and his enrolled dependents, at no cost to the employee, the Blue Cross Semi-Private Room Plan with the Maternity Care Rider, Major Medical insurance coverage and the CMS Community Plan." Clearly, the parties, by agreeing to article 17, did not intend to allow the submission to arbitration of claims by covered employees which had been disallowed by Blue Cross, CMS or the major medical carrier. The pension plans are not incorporated by reference nor are they set forth verbatim in the agreement. It is, therefore, impossible to say that the substantive provisions of the pension plans were made part of the agreement or that the parties signified their willingness to submit pension disputes to arbitration. As stated before: "No one is under a duty to submit any question to arbitration except to the extent that he has signified his willingness." *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.*, 148 Conn. 192, 197, 169 A.2d 646. Therefore, since the city did not signify its willingness to submit such disputes to

arbitration, the court properly denied the application of Local 530 and Council 15 for an order directing the city to proceed with arbitration.

Having decided that the dispute is not a proper subject for arbitration under the agreement, we must now determine whether the equitable remedy of injunctive relief is available to the city and the retirement board. The parties seeking arbitration argue that it is incumbent upon a plaintiff to prove that he will suffer irreparable injury unless an injunction is granted or no such relief may be granted.

Our cases establish that the imminence of irreparable injury and the absence of an adequate remedy at law are ordinarily prerequisites to the granting of injunctive relief. *Koepper* v. *Emanuele,* 164 Conn. 175, 319 A.2d 411. The facts of this case were submitted to the court by stipulation of the parties. One part of the stipulation, which was adopted by the court as a finding of fact, stated that Local 530 intended to proceed with arbitration before the Connecticut State Board of Mediation and Arbitration. This stipulation is adequate to establish that absent court interference the parties seeking the injunction would be required to submit to the acts of an arbitrator without authority. This result could only be prevented by an injunction which the Superior Court correctly issued. The parties seeking injunctive relief provided an adequate basis for the court to decide the legal question of the inadequacy of the remedy at law and the factual issue of irreparable harm.

There is no error.

In this opinion HOUSE, C. J., and BARBER, J, concurred.

Loiselle, J. (dissenting). These consolidated appeals present two questions. The first is: Does the contract at issue here assign to the arbitrators the duty of *deciding* which disputes are arbitrable, or is that decision one for the courts? I agree with the majority opinion that this contract does not assign that duty to the arbitrators. The arbitration clause requires arbitration of "[m]atters relating to the interpretation and application of the Articles and Sections of this Agreement." I understand that we have decided to follow the United States Supreme Court in arbitration matters. The language of this arbitration clause tracks that of a contract which the United States Supreme Court held left the *decision* as to which disputes are arbitrable to the courts. The language in that contract required arbitration of all disputes " 'as to the meaning, interpretation and application of the provisions of this agreement.' " *United Steelworkers of America* v. *American Mfg. Co.,* 363 U.S. 564, 565, 80 S. Ct. 1343, 4 L. Ed. 2d 1403.

Once the decision as to which disputes are arbitrable has been determined to be one for the court to make, the second question arises: Is *this* dispute arbitrable? It is in answering this question that I disagree with the majority. If we follow the United States Supreme Court, and apply the same test it applied in *United Steelworkers of America* v. *American Mfg. Co.,* supra, this dispute is arbitrable.

*United Steelworkers of America* v. *American Mfg. Co.,* supra, involved a grievance which the Court of Appeals had determined to be frivolous and patently baseless, thus not subject to arbitration. The Supreme Court reversed, holding that even frivolous, baseless claims must go to arbitration if "the party seeking arbitration is making a claim which

on its face is governed by the contract." Id., 568. The court explained: "The courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. . . . The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware." Ibid. I submit that the majority opinion weighs the merits and looks for language in the written instrument to support the claim.

The grievance in this case is a claim by the union that the "contract provided for a review of the orders and decision of the Policemen's and Firemen's Retirement Board." The majority tests the arbitrability of the dispute by asking whether the agreement incorporated the provisions of the police pension plans, or whether the parties signified their willingness to submit *pension disputes* to arbitration. I think those are the wrong yardsticks. The contract clearly indicates the willingness of the parties to submit to arbitration disputes concerning the application and interpretation of the contract, and one party has asserted that the contract should be interpreted to provide for review of the decision of the pension board. This is a dispute concerning interpretation of the contract, and it must go to arbitration.

Applying the test of *United Steelworkers of America* v. *American Mfg. Co.,* supra, "whether the party seeking arbitration is making a claim which on its face is governed by the contract," it is clear that this claim, that the contract provides for review, is determined *by the contract*. The fact that

examination of the contract shows that no review is provided for does not make the dispute less arbitrable, but more arbitrable. This is a claim not governed by statute, by general contract law or, indeed, by any authority other than the contract itself. Only by looking *to the contract* may its validity or lack of validity be seen.

I would find error, vacate the judgments and remand with direction to deny the injunction and order the parties to proceed with arbitration.

In this opinion BOGDANSKI, J., concurred.